ELEANOR STRIBLING *et al.*

*v.*

BENJAMIN S. PRETTYMAN.

1. EJECTMENT—*letting in third persons to defend.* In an action of ejectment, after judgment rendered against the defendant in possession, upon motion based on affidavit at a subsequent term other parties were permitted to defend: *Held*, the affidavit, it appearing from the statements therein

that the title claimed by the applicants was consistent with the possession, and that there was a privity of interest between them and the original defendant, was sufficient to justify the action of the court in vacating the judgment and permitting the applicants to defend—it was not necessary that an exhibit of their title should accompany the affidavit.

2. CONSTRUCTION OF STATUTES—*general rules.* In the construction of statutes, the intention of the legislature is always a proper subject of inquiry. The intention is to be ascertained from the act itself and other acts in *pari materia*—all acts in *pari materia* are to be taken together as if they were one law—and this rule prevails even though some of the acts may have expired or been repealed.

3. EXECUTION—*within what time it may issue.* Upon a judgment obtained in a court of record execution may issue against the judgment debtor if one was issued within a year and a day, and its collection be enforced against the real estate of the debtor except "as against *bona fide* purchasers and subsequent incumbrancers, etc.," after the expiration of seven years, and at any time within twenty years. *

4. WALKER and SCOTT, JUSTICES, hold that execution can not lawfully issue after the expiration of seven years, except upon a *scire facias* to revive the judgment.

5. SHERIFF'S DEED—*insufficiency of return of sale—its effect.* In an action of ejectment, where the plaintiff claimed under a sheriff's sale, an objection that the sheriff's return upon the execution failed to show a sale, was overruled. It was only necessary for the plaintiff to produce the judgment and execution, to entitle his deed to be read in evidence. His title could not be defeated by the neglect of the sheriff to make a proper return.

6. INSTRUCTIONS—*whether proper.* In an action of ejectment, where a register's certificate of purchase was given in evidence, it was *held* proper to instruct the jury that the certificate was evidence of title in the person to whom it was issued, and that a judgment and execution against such person, together with a sheriff's deed thereunder, conveyed the title to the grantee therein. While instructions should not assume the existence of facts, still it is proper for the court to direct the jury as to the legal effect of the evidence admitted.

7. ESTOPPEL—*admissions.* The admission in open court by the defendant in ejectment, that the plaintiff had title at the time of the commencement of the suit, operates as an estoppel, and it is the province of the court so to direct the jury.

WRIT OF ERROR to the Circuit Court of Tazewell county; the Hon. JAMES HARRIOTT, Judge, presiding.

---

* See act 22 March, 1872, Sess. Laws, p. 506, sec. 6.

Mr. C. A. ROBERTS and Mr. N. W. GREEN, for the plaintiffs in error.

Messrs. PRETTYMAN & WARE, for the defendant in error.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

This was an action in ejectment, instituted by Prettyman against Casey, to recover the possession of certain premises. By agreement, the heirs of Jacob Haas were permitted to defend.

At the February term, 1865, of the circuit court, a trial was had before the court, without a jury, and there was a finding in favor of defendant in error.

At the February term, 1866, plaintiffs in error were, upon motion based on affidavit, allowed to come in and defend.

Defendant in error questions this action of the court below, and insists that, in addition to the affidavit, at least a *prima facie* case should have been made out, by the exhibition of some title in the ancestor of plaintiffs in error. The affidavit of Rhodes, upon which the motion was founded, stated that Casey, the original defendant, and occupant of the premises, was the tenant of the guardian or administrator of Jacob Haas, deceased, whose heirs, by agreement, were made parties prior to the first trial ; that Haas claimed title by deed from one Reisinger ; that Reisinger derived title by deed, with covenants of warranty, from David C. Alexander, the ancestor of plaintiffs in error ; and that he, in his life-time, had a perfect title to the land.

The rule, briefly stated in all the books, is, that in ejectment every person is considered as a landlord, entitling him to defend, whose title is connected to and consistent with the possession of the occupier. *Williams* v. *Brunton*, 3 Gilm. 600 ; *Stiles'* ads. *Jackson*, 1 Wend. 316 ; Adams on Ejectment, 230.

It is apparent, from the statements in the affidavit, that the title claimed by plaintiffs in error was clearly consistent with

the possession. There was certainly a privity of interest between the applicants and the original defendant. They had an interest, as the matter was presented to the court. True, they wholly failed, on the trial, to prove the alleged interest. They exhibited no deed either to their father or from him to Reisinger. The affidavit, however, was sufficient to justify the action of the court in the vacation of the judgment and permitting plaintiffs in error to defend. We can perceive no good reason for requiring an exhibit of title to accompany the affidavit. It would be a harsh and stringent rule, and might work great injustice. The policy of the law is, to afford all reasonable facilities to parties to obtain and protect their rights.

On the second trial, defendant in error again recovered a judgment.

The first error assigned for reversal is, that the sheriff's deed should not have been read to the jury. The judgment upon which the execution was issued, and by virtue of which the sheriff sold, was rendered April 17, 1838. Execution was issued and returned within the year after the date of the judgment. The execution by which the sale was made, was issued and dated the 25th of December, 1857. It is argued that the judgment, at the latter date, was a nullity; and that no execution could properly issue after the lapse of seven years.

The evidence of title was the following:

Certificate of the register of the land office to Spencer Field, of date November 28, 1836; judgment against Field, April 19, 1838; execution issued thereon April 19, 1838; fifth execution dated 25th December, 1857; sale of land, and deed from sheriff to defendant in error.

The following is the first section of the chapter of the statutes entitled "Judgments and executions:" "All and singular the goods and chattels, lands, tenements and real estate of every person, against whom any judgment has been or hereafter shall be obtained in any court of record, either at law or in equity, for any debt, damages, costs or other sum of money, shall be liable to be sold on execution, to be issued on such

judgment; and the said judgment shall be a lien on such lands, tenements and real estate, from the last day of the term of the court in which the same may be rendered, for the period of seven years: *Provided,* that execution be issued at any time within one year on such judgment; and from and after the said seven years, the same shall cease to be a lien on any real estate, as against *bona fide* purchasers, or subsequent incumbrancers by mortgage, judgment or otherwise."

Our statute of limitations provides that judgments may be revived by *scire facias,* or an action of debt may be brought upon them within twenty years after their rendition, and not after.

In determining the construction of those statutes, and the intention of the legislature, we are aided much by reference to previous legislation. During our territorial existence, real estate was authorized to be seized and sold, upon judgment and execution obtained, as early as August 15, 1795. (See Real Estate Statutes by Purple, 294, *et seq.*) Various enactments were made, between 1795 and 1823, subjecting real estate to sale, and making judgments a lien on the same, without any limitation or any exception in favor of *bona fide* purchasers or subsequent incumbrancers, after the lapse of seven years.

The present statute was in force May 1, 1825. At that time the limitation law, barring the revivor of judgments after twenty years, had not been passed. This latter law was not in force until June 1, 1827.

It will thus be seen that by all the legislation in the territory and State, until 1825, lands were subject to sale without any restriction in the statute, or any protection of the rights of third persons, as now provided.

In the construction of statutes, the intention of the legislature is always a proper subject of inquiry. The intention is to be ascertained from the act itself, and other acts in *pari materia.* Lord MANSFIELD said: "All acts in *pari materia* are to be taken together, as if they were one law." This rule prevails, even though some of them may have expired or been repealed.

What was the object of the legislation, antecedent to 1825 ? It was unquestionably to give a lien on the judgment debtor's lands, without any saving as to purchases by third persons. There was no bar to the lien, except according to the common law.

What was the object of the law of 1825 ? What mischief did it design to remedy? It was to remove the embarrassment upon the transfer of real estate, which existed prior to 1825 ; and to prevent any interference with subsequent purchasers, after the expiration of seven years from the date of the judgment. The judgment is not barred until after twenty years. It only ceases to be a lien after seven years, upon property then acquired by innocent purchasers or subsequent incumbrancers. The judgment debtor is not released, and an execution may issue against him at any time within twenty years, if one had been issued within one year after the judgment.

Stripped of much verbiage, the plain reading of the statute is: The real estate of a judgment debtor, if execution issued on the judgment within the year, may be levied upon and sold within the time limited by statute for its revivor by *scire facias* or action of debt; except that it shall cease to be a lien as against *bona fide* purchasers or subsequent incumbrancers, by mortgage, judgment or otherwise, after the expiration of seven years from its rendition.

The construction of the limitation law is, that a judgment may be revived at any time within twenty years from its rendition, if no execution has been issued within a year and a day. It should not be construed to mean that it must be revived after the expiration of seven years, if execution was issued within the year and a day. In construing the two statutes together, the evident meaning is, that the judgment is of binding force for twenty years, provided the statute is complied with ; and its collection can be enforced, except as against *bona fide* purchasers, etc.

Plaintiffs in error object to the return of the sheriff upon the execution, as not showing a sale, and refer to *Douglas* v. *Whiting,* 28 Ill. 362. The case is not in point. In that case the execution did not contain the name of any person, and for that reason was pronounced defective. Defendant in error claimed title under a sheriff's sale. He need only produce the judgment and execution, to entitle the deed to be admitted. A title can not be defeated by the neglect of the sheriff to make a proper return. *Hinman* v. *Pope,* 1 Gilm. 131 ; *Bybee* v. *Ashbee,* 2 Gilm. 151.

After the commencement of this suit, defendant in error conveyed the premises to Haas' heirs. This deed is introduced by plaintiffs in error, and they seem to rely on it, and show no title in themselves; no possessory right or interest of any kind in their ancestor; no liability upon his covenants ; and are not entitled to much indulgence from the court.

Complaint is made that the court instructed the jury that the register's certificate was evidence of title in Field; and, that the judgment, execution and deed from the sheriff conveyed title to defendant in error; and that the admission, in open court, that defendant in error had title, is an estoppel on the part of plaintiffs in error.

In this there is no error. It is true, instructions should not assume facts, which must be found by the jury. The documentary evidence had been passed upon, and admitted by the court. The jury must be informed by the court, as to the legal effect of such evidence. The admission, of the title of the defendant in error, at the time of the commencement of the suit, was an estoppel, and the court had the right so to declare.

The judgment is affirmed.

*Judgment affirmed.*

WALKER, JUSTICE: I am unable to concur in the conclusion announced by the majority of the court in this case. In the case of *Dooley* v. *Rucker,* 49 Ill. 377, it was held that a purchaser at

an execution sale must present his certificate of purchase to the sheriff for a deed, in a reasonable time, which was held to be the same length of time, after the redemption had expired, that the judgment is a lien on real estate. It was there held that the analogies of the law should be applied, and that they required the deed to be executed within seven years after the redemption had expired, and if not made within that time, that a deed could only be made by the sheriff on an order of the court in which the judgment was rendered. That case is placed upon the presumption that the judgment debtor had adjusted the purchase and failed to take up the certificate.

If such is the inference from the statute rendering the judgment a lien for only seven years, so as to raise, as between the debtor and creditor, the presumption that the sale had been cancelled by arrangement between them, why should not the presumption be indulged after seven years from the date of the judgment, that it had been paid, but a satisfaction had been neglected. And why should not the plaintiff, for the same reason, be required to apply to the court by *scire facias* for an order for an execution. I am, therefore, clearly of opinion that the case of *Dooley* v. *Rucker, supra,* should govern the case at bar.

SCOTT, JUSTICE : I concur in the views expressed by Mr. JUSTICE WALKER.