JOSEPH DEVOUS *et al.* Plaintiffs in Error, *vs.* GALLATIN COUNTY *et al.* Defendants in Error.

*Opinion filed February 16, 1910.*

1. COUNTY SEATS—*ground of equity jurisdiction in contests had prior to act of 1872.* Prior to the act of 1872, providing for the removal of county seats, courts of equity had taken jurisdiction of the county seat election contests, not because the contest of an election was either an action at law or a case in equity, but for the purpose of determining where the citizens of the county had a legal right to transact business, and the question of the legality of the votes was only incidentally involved.

2. ELECTIONS—*general Election law and County Seat Election law must be construed together.* The act to provide for the contest of elections for the removal of county seats and the general Election law were passed by the same legislature, took effect on the same day, related to the same subject matter and are not inconsistent with or repugnant to each other, and being contemporaneous and *in pari materia* must be construed together.

3. SAME—*when proceeding to contest county seat election must be brought.* The general limitation contained in section 117 of the general Election law, requiring a proceeding to contest an election upon any subject which may by law be submitted to a vote of the people of the county to be begun within thirty days after the result of the election shall have been determined, applies to elections for the removal of county seats.

4. SAME—*contest of election for removal of county seat cannot be reviewed on writ of error.* A proceeding to contest an election

for the removal of a county seat is a purely statutory proceeding in which a writ of error is not a writ of right, and the only mode of bringing such proceeding to the Supreme Court for review is by an appeal, as provided in the general Election law, and not by writ of error.

WRIT OF ERROR to the Circuit Court of Gallatin county; the Hon. E. E. NEWLIN, Judge, presiding.

R. M. MORRISON, COOPER & BURGESS, and CREIGHTON & THOMAS, for plaintiffs in error.

THOMAS H. DAILY, State's Attorney, C. K. ROEDEL, City Attorney, BOGGS & BOGGS, JESSE E. BARTLEY, MARSHALL E. LAMBERT, D. M. KINSALL, and CARL ROEDEL, for defendants in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

An election was held in Gallatin county on November 10, 1908, at which the question of the removal of the county seat from the city of Shawneetown to the village of Ridgway was submitted to the legal voters of the said county. The returns, when canvassed, showed a majority of seventy votes against the removal, and on December 9, 1908, the plaintiffs in error, five citizens of the incorporated village of Ridgway, and the village, filed their petition in the circuit court of said county against two of the defendants in error, Gallatin county and the city of Shawneetown, for a contest of the election, alleging that the majority of the legal votes cast were in favor of the removal but that illegal votes were received and counted; that the judges of election were guilty of fraud in knowingly receiving and counting the same, and that there were irregularities in the conduct of the election. Richard Cadle, who is also a defendant in error, was made a defendant to the petition on his application. There was a demurrer to

the original petition and an amended petition was filed on June 17, 1909. Cadle moved to dismiss the suit because the amended petition was not filed within thirty days after the result of the election had been declared, but the court overruled the motion. The county of Gallatin and city of Shawneetown demurred to the amended petition and the demurrer was sustained. The petitioners elected to stand by the amended petition and the court dismissed it at their costs. A writ of error was sued out to bring the record into this court for review, and the defendants in error have entered their motion to dismiss the writ.

The election was held under the provisions of the act to provide for the removal of county seats, in force July 1, 1872. (Laws of 1871-72, p. 309.) Prior to the time when that act became effective no method had been provided for contesting an election upon the question of removing a county seat, and courts of equity had taken jurisdiction under their general powers to determine the result of the election. This was not done on the ground that a contest of an election was an action or case either at law or in equity, but for the purpose of determining where the citizens of the county had a legal right to transact public business. It was held that the proceeding was not a contest of an election and that the question of the legality of votes was only incidentally involved. (*Boren* v. *Smith*, 47 Ill. 482; *People* v. *Wiant*, 48 id. 263; *Knox County* v. *Davis*, 63 id. 405; *Dickey* v. *Reed*, 78 id. 261.) On the same day that the act for the removal of county seats took effect, the general Election law, covering the same subject and passed by the same legislature, went into force. (Laws of 1871-72, p. 380.) Section 97 of the Election law provided that the circuit courts might hear and determine contests of elections in reference to the removal of county seats, and section 116 provided that the case should be tried in like manner as cases in chancery. These sections were amended in 1895 but were not changed in those respects.

Section 117 authorized any five electors of the county to contest the election, and section 118 provided that if the county board should fail or refuse properly to defend the contest, the court should allow any one or more electors of the county to appear and defend. The constitutional provision respecting the number of votes necessary for a removal required additional provisions peculiar to an election to remove' a county seat, and those provisions were supplied by section 12 of the act for the removal of county seats. That section made the number of legal votes cast *prima facie* evidence of the number of legal voters of the county, but provided that if it should become necessary, in consequence of a contest, to ascertain the number of voters of the county, the court in which the contest might be pending should have power to ascertain the number of such voters by taking, or causing to be taken, legal evidence tending to show the fact. It further provided that courts of equity should have jurisdiction of all cases of contested elections under the act, and might determine all questions of fraud and fraudulent voting connected therewith and purge the poll-books and returns of all illegal or fraudulent votes, and investigate and ascertain the total number of legal voters of the county at the time of the election entitled to vote on the question, whether they voted or not, and ascertain and determine whether the election was fairly carried by three-fifths, or a majority, of all the legal voters of the county, as required by the constitution. Any legal voters and tax-payers of the county, as well as the town, city or village to or from which it was proposed to remove the county seat, could be made, or on their petition were authorized to become, parties to the suit.

These acts were passed by the same legislature, took effect the same day, related to the same subject and were not repugnant or inconsistent with each other. Being contemporaneous and *in pari materia*, they are to be construed together as if they were one statute. (*Stribling* v. *Pretty-*

*man,* 57 Ill. 371; *Hunt* v. *Chicago Horse and Dummy Railway Co.* 121 id. 638; *Union Nat. Bank* v. *Byram,* 131 id. 92; *Lake Shore and Michigan Southern Railway Co.* v. *City of Chicago,* 148 id. 509; *South Park Comrs.* v. *First Nat. Bank,* 177 id. 234; 26 Am. & Eng. Ency. of Law,—2d ed.—623.) We so construed the two acts in the case of *Village of Metamora* v. *Village of Eureka,* 163 Ill. 9, and applied the limitation of the Election law. The legislature could not have intended, if the suit was brought under the Election law, that a limitation of thirty days should apply, but that if brought under the act for the removal of county seats there should be no limitation, nor that the provisions of the County Seat act, such as ascertaining the number of legal voters of the county, should not apply if the contest was under the general Election law. Courts of equity had taken jurisdiction under their general powers for the sole reason that there was an absence of necessary legislation for a contest by any other means, but when the legislature provided a method of contesting such an election there ceased to be any ground for interference by a court of equity under its general powers and the jurisdiction has not since been exercised.

A proceeding to contest an election is not an action at law or a suit in equity, but is a purely statutory proceeding unknown to the common law. (*Moore* v. *Mayfield,* 47 Ill. 167; *People* v. *Smith,* 51 id. 177; *Douglas* v. *Hutchinson,* 183 id. 323; *Brueggemann* v. *Young,* 208 id. 181.) It is not, therefore, a proceeding in which a writ of error is a writ of right, and the only mode for bringing the record to this court for review is an appeal, as provided in the Election law. *Hall* v. *Thode,* 75 Ill. 173; *Sweeney* v. *Chicago Telephone Co.* 212 id. 475.

The motion to dismiss the writ of error is allowed and the writ is dismissed.          *Writ dismissed.*