The Chicago and Eastern Illinois Railroad Co.

*v.*

Daniel Clapp.

*Opinion filed February 18, 1903.*

1. Railroads—*railroad condemning lands for right of way acquires only an easement.* Under section 13 of article 2 of the constitution a railroad company condemning land for right of way acquires only an easement for railroad purposes, and the fee remains in the original owner.

2. Same—*easement of right of way is lost by abandonment.* The easement of right of way acquired by a railroad company by condemnation ceases upon abandonment of the same by the company, and the property reverts to the owner of the fee.

3. Same—*abandonment of right of way is a question of intention.* To constitute an abandonment of an easement of right of way there must be not only an actual relinquishment, but an intention to abandon; and this is a question of fact for the jury, under evidence.

4. Same—*when the question of abandonment is properly left to jury.* Whether a railroad company has abandoned a branch road is a question for the jury, under evidence that the railroad was completely dismantled by removing the rails, most of the ties, cattle-guards, bridge timbers, switch ties and crossing signs.

5. Evidence—*purpose for which road was built is competent upon question of abandonment.* Proof that a branch road was built for the sole purpose of hauling coal from and transporting timbers and supplies to a coal mine which had afterwards "played out" and been abandoned, is competent to be considered upon the question of the company's intention to abandon the dismantled road.

6. Same—*expression of intention as to abandonment is not conclusive.* The expressed intention of the president of a railroad company that the taking up of the track was not to be an abandonment of the right of way is not conclusive upon the question of abandonment, but may be considered in connection with the other facts and circumstances.

7. Ejectment—*railroad company in possession is the proper defendant in ejectment.* A party bringing ejectment to recover land occupied as railroad right of way need make only the company in possession a party defendant; since the judgment will bind the latter and those under whom it occupies or with whom it is in privity of estate or possession.

8. Same—*an outstanding title must be valid and subsisting.* An outstanding title in a third person, in order to constitute a defense to ejectment, must be a subsisting, valid and effective title, which

would enable the third party to maintain an action for possession against both plaintiff and defendant.

9. Instructions—*when instruction is not misleading.* An instruction providing that "in case of abandonment of said right of way for the purpose of maintaining and operating thereon a railroad, the right to the use and possession of it reverts" to the owner of the fee, is not misleading, as omitting the element of intention, where other instructions expressly hold that there cannot be an abandonment without an intention to abandon.

Appeal from the Circuit Court of Vermilion county; the Hon. F. Bookwalter, Judge, presiding.

This is an action of ejectment, brought by the appellee against the appellant company to recover the possession of a strip of land sixty-six feet wide off of the south side of the north-east quarter of the north-west quarter of section 11, town 19, north, range 13, west of the second principal meridian in Vermilion county, of which the declaration alleges that the appellee is the owner in fee simple. To the declaration the plea of the general issue was filed. The case was tried before the court and a jury. The jury returned a verdict finding the defendant guilty, and that the plaintiff was the owner in fee simple, entitled to the possession of said strip. Motion for new trial was overruled, and judgment was rendered on the verdict. The present appeal is prosecuted from such judgment.

An affidavit was made by appellee, the plaintiff below, that he claimed title through a common source with the appellant company, the defendant below. The affidavit stated that appellee claimed title from one William P. Makemson, and that the appellant claimed title from Makemson. Upon the trial appellee, Daniel Clapp, introduced a warranty deed from William P. Makemson, and wife, to himself, conveying said forty acres, which said deed contained the following words: "Subject to a lease of the right of way of the C. & E. I. R. R. off of the south side of above described land." Appellee also in

troduced the proceedings in a certain condemnation case
of the Danville Coal Belt Railroad Company against
John A. Clapp, William Makemson, and others, begun on
July 19, 1893. The petition for condemnation recites that
the Danville Coal Belt Railroad Company is duly or-
ganized under the laws of Illinois, and authorized to con-
struct, own and operate a line of railroad in Vermilion
county, beginning at a point on a branch of the Chicago
and Eastern Illinois railroad, the appellant herein, and
running thence to a coal mine, called the Glenburn Coal
Mine. In the condemnation proceeding William P. Ma-
kemson, who was defendant, filed a cross-petition for
damages to other property, owned by him, than that
sought to be condemned. A verdict was returned allow-
ing to Makemson for land taken, and damages to land
not taken, the sum of $238.00; and on August 3, 1893, an
order was rendered upon the verdict that the petitioner,
upon the payment of $238.00, use, possess and enjoy said
strip off the south side of the north-east quarter of said
north-west quarter, belonging to William Makemson, for
the purpose of maintaining and operating thereon a rail-
road. It is conceded that the Danville Coal Belt Railroad
Company paid the costs in the condemnation proceed-
ings, and to the county treasurer the compensation and
damages allowed to Makemson and the other defendants.
The appellant, defendant below, introduced in evidence
the articles of incorporation of the Danville Coal Belt
Railroad Company.

H. M. STEELY, (W. H. LYFORD, of counsel,) for appel-
lant:

Mere non-user, even though for twenty years, will not,
of itself, extinguish an easement. It must be accompa-
nied by an express or implied intention of abandonment.
*Durfee* v. *Railway Co.* 140 Ill. 435; 1 Am. & Eng. Ency. of
Law, 6, note 2; Tiedeman on Real Prop. sec. 605; *Corning*
v. *Gould,* 16 Wend. 531.

The burden of proof to show an abandonment of an easement is upon the party claiming such abandonment, and he must show that fact by clear and unequivocal evidence.    Jones on Easements, sec. 850; *Waring* v. *Crow*, 11 Cal. 366; *Richardson* v. *McNulty*, 24 id. 339; *Railroad Co.* v. *Railroad Co.* 6 Cal. App. 130.

Where it is claimed that there has been a forfeiture of a right of way by non-user or abandonment, the question of intent becomes material and may be testified to. *Durfee* v. *Railway Co.* 140 Ill. 439; *Chicago* v. *Railway Co.* 152 id. 570; *Bloomington* v. *Cemetery Ass.* 126 id. 221; *Princeton* v. *Templeton*, 71 id. 68; *McIntyre* v. *Storey*, 80 id. 127.

Where property has been taken by condemnation proceedings and the owner accepts damages awarded him, he and those claiming under him will be forever estopped from alleging anything against the validity of the proceedings.    Lewis on Eminent Domain, sec. 606; *Town* v. *Blackberry*, 29 Ill. 137; *Ross* v. *Chicago*, 38 id. 322; *Hartshorn* v. *Potroff*, 89 id. 509; *Kile* v. *Yellowhead*, 80 id. 208; *Sheaf* v. *People*, 87 id. 189; *Railroad Co.* v. *Karnes*, 101 id. 402.

In ejectment plaintiff must recover upon the strength of his own title, and not upon the defects in or weakness of the title of defendant. *Hague* v. *Porter*, 45 Ill. 318; *Marshall* v. *Barr*, 35 id. 106; *Masterson* v. *Cheek*, 23 id. 72; *Kirby* v. *Railroad Co.* 109 id. 413; *McCauley* v. *Mahon*, 174 id. 385; *Cobb* v. *Lavalle*, 89 id. 331; *King* v. *Mullins*, 171 U. S. 404.

Where an outstanding title is shown to the premises in controversy in a third person, the plaintiff in ejectment cannot recover though the defendant may not be able to connect himself with that title.    *Cobb* v. *Lavalle*, 89 Ill. 331; *Stuart* v. *Dutton*, 39 id. 91; *Masterson* v. *Cheek*, 23 id. 72; *Rupert* v. *Mack*, 15 id. 540.

Defendant can rely on his possession in entire safety, and unless plaintiff shows good title in himself defendant cannot be disturbed in such possession, no matter whether he has title or is a mere intruder or trespasser. *Hague* v. *Porter*, 45 Ill. 318; *Kirby* v. *Railway Co.* 109 id. 417.

Even though the defendant in possession has no paper title, still, before a recovery can be had, plaintiff must show title to the premises and right to immediate possession in himself. *Sands* v. *Kagey,* 150 Ill. 115; *Cobb* v. *Lavalle,* 89 id. 332.

Lawrence & Lawrence, for appellee:

The fee of land taken for railroad tracks without consent of the owners thereof shall remain in such owners, subject to the use for which it is taken. Const. of 1870, art. 2, sec. 13.

The owner retains the right to use this right of way for every purpose not inconsistent with its use for a railway. 10 Am. & Eng. Ency. of Law, (2d ed.) 1197.

The right and title of a railroad company to such land are conditioned upon its use for railroad purposes, and when such use becomes impossible or is abandoned, its right to hold the land ceases and the property reverts to the original owner, or, as in this case, to his grantee. 10 Am. & Eng. Ency. of Law, (2d ed.) 1198; *Helm* v. *Webster,* 85 Ill. 116.

The question of abandonment is one of intention, depending upon all the facts and circumstances disclosed by the evidence and to be determined by the jury. *Keane* v. *Cannovan,* 82 Am. Dec. 744; *Wyman* v. *Hurlburt,* 40 id. 464, and notes.

Non-user is competent evidence of intention, and if it be long continued, especially where no intention is expressed, the jury may sometimes find therefrom an intention to abandon. *Keane* v. *Cannovan,* 21 Cal. 293.

Whenever the non-use is accompanied by acts on the part of the owner of the dominant tenement which manifest an intention to abandon, and either destroy the object for which the easement was created or the means of its enjoyment, an abandonment will take place. *Davis* v. *Gale,* 32 Cal. 27; *Canny* v. *Andrew,* 123 Mass. 155; *Ward* v. *Ward,* 7 Ex. 838.

Ejectment is a possessory action and determines none but possessory rights, and hence at common law, as a general rule, must be brought against the person in possession of premises.   10 Am. & Eng. Ency. of Law, 524.

Mr. Chief Justice Magruder delivered the opinion of the court:

Upon the trial of the case at bar, the appellee claimed title to the property in question by warranty deed executed to him by William P. Makemson.   The interest of the appellant in the strip of land in question is also derived from William P. Makemson through a condemnation proceeding, instituted by the Danville Coal Belt Railroad Company against William P. Makemson, the owner of the forty acres, of which the strip in question, sixty-six feet wide, was a part.   The road passed into the possession of the appellant company, and was operated by it through an arrangement, made by appellant company with the Danville Coal Belt Railroad Company.

Section 13 of article 2 of the constitution of 1870 of Illinois, provides that "the fee of land taken for railroad tracks without consent of the owners thereof, shall remain in such owners subject to the use for which it is taken." (Starr & Cur. Ann. Stat.—2d ed.—p. 113.) Therefore, by the condemnation proceeding the petitioning railroad therein only acquired an easement over the strip in question sixty-six feet wide, with the right to use the same for railroad purposes.   After the condemnation the fee of the land, included within the strip, remained in William P. Makemson, and passed to his grantee, the present appellee, subject to the easement therein of the railroad company, and subject to the right of the latter to use the strip for railroad purposes.   In this State, where land is condemned for railroad purposes, only an easement is taken, and the fee remains in the original owner, who may use the land for every purpose not incompatible with the use, for which it has been appropri-

ated by the railroad company. (10 Am. & Eng. Ency. of Law,—2d ed.—p. 1197, and cases in notes).

Appellee bases his right to a recovery in this case upon the ground that the strip in question was abandoned by the railroad company. The contention of the appellee is, that the right and title of the railroad company to the use of the strip were conditioned upon its use for railroad purposes, and that, when that use was abandoned, its right to hold the land ceased, and the property reverted to the original owner, or his grantee, the appellee in this case. The law is that, "when a corporation, in the exercise of the right of eminent domain, acquires for a public purpose a mere easement in land, its right and title to the property so acquired are dependent upon the use of the property for public purposes, and when such public use becomes impossible, or is abandoned, its right to hold the land ceases, and the property reverts to its original owner." (10 Am. & Eng. Ency. of Law,—2d ed.—p. 1198; *Kansas Central Railroad Co.* v. *Allen,* 22 Kan. 285; *Helm* v. *Webster,* 85 Ill. 116). In *Kansas Central Railroad Co.* v. *Allen, supra,* it was said: "An easement merely gives to a railroad company a right of way in the land; that is, the right to use the land for its purposes. This includes the right to employ the land taken for the purposes of constructing, maintaining and operating a railroad thereon. * * * The former proprietor of the soil still retains the fee of the land, and his right to the land for every purpose not incompatible with the rights of the railroad company Upon the discontinuance or abandonment of the right of way, the entire and exclusive property and right of enjoyment re-vest in the proprietor of the soil. After the condemnation and payment of damages, the soil and freehold belong to the owner of the land, subject to the easement or encumbrance, and such land owner has the right to the use of the condemned property, provided such use does not interfere with the use of the property for railroad pur-

poses." In *Helm* v. *Webster, supra,* which was an action of ejectment, brought by Webster against Helm to recover the south half of a certain street in the city of Quincy, it was held that, where a party, in conveying land to a city for a street, provides in his deed that, when the same shall cease to be used as a street, or the street shall be abandoned, or vacated, it shall revert to the grantor, his heirs or assigns, on vacation of the street the land will pass back to the grantor or his assigns by virtue of such clause, and also upon general principles without such a reservation; and in that case it was said: "It cannot be denied that, by virtue of Holmes' deed to appellee of November 18, 1865, appellee became vested with all the rights reserved by Holmes in his deed of August 24, 1855; but without that reservation in this deed, Holmes, on general principles, would have been remitted to his title, on the abandonment of the street by the city.  *  *  * The street having been vacated and abandoned by the city on March 14, 1876, from that time the fee reverted to appellee, and is in him, and the court decided correctly."

*First*—The material question in the case, therefore, is whether there was an abandonment of the strip of land in question by the railroad company.  At the close of appellee's case upon the trial below, and again at the close of all the evidence, the appellant asked the court to give to the jury a written instruction that the evidence, taken as a whole, was not sufficient to support a verdict in favor of the plaintiff, and directing the jury to return a verdict finding the issues for the defendant.  This instruction was refused, and its refusal is assigned as error by the appellant.

To constitute an abandonment there must be not only an actual relinquishment of the property, but an intention to abandon it.  The intention of the party, whose rights are alleged to be abandoned, is the important fact to be ascertained in determining whether or not there has actually been an abandonment of the property.  This

question of fact is one for the determination of the jury, depending upon all the facts and circumstances disclosed by the evidence. (*Keane* v. *Cannovan,* 21 Cal. 293; *Same case,* 82 Am. Dec. 744; *Wyman* v. *Hurlburt,* 12 Ohio, 81; *Same case,* 40 Am. Dec. 464, and notes; *McGoon* v. *Ankeny,* 11 Ill. 558). In *Keane* v. *Cannovan, supra,* it was said by Mr. Chief Justice Field: "The charge to the jury on the subject of abandonment was correct. The charge was that the question of abandonment was one of intention, of which the jury was to judge exclusively, and that, in order to do so, they must take into consideration all the facts and circumstances before them. The question was correctly stated; it was plainly one of intention to be gathered from the facts."

In the case at bar, the railroad constructed upon the strip in question was built from a branch of the appellant company for a distance of about three miles to a coal mine, called the Glenburn Coal Mine, and was indeed but a spur or branch of appellant's railroad. It was operated exclusively for the purpose of hauling coal from the coal mine in question, and for the purpose of hauling supplies and timbers, known as coal props, to be used in connection with the mine. The railroad was used for the purpose of thus hauling coal from the mine and coal supplies to the mine for about seven years after its construction in 1893. In 1899 the coal mine was abandoned. In the language of one of the witnesses, "the mine played out in 1899." The railroad shortly thereafter, and, according to some of the witnesses, in November, 1900, ceased to operate the road, and completely dismantled it. The testimony shows that the tracks were taken up, that nearly all the ties were taken out; that the cattle-guards, except two or three wooden ones, were removed; that the switch ties and bridge timbers were taken out; and also that the signs at the railroad crossings were removed. The rails, taken up by the appellant company, were used by it in the construction of another road, which the ap-

pellant was building in the southern part of the State. The right of way was allowed to grow up with weeds, and while the fences along the right of way were left, they were not kept in repair. Since the coal mine was abandoned and since the dismantling of the road in the manner thus stated, the road has not been operated for railroad purposes. By the instructions, given by the court to the jury upon the trial below, it was left to the jury to determine from the evidence in the case, and from all the facts and circumstances thus detailed, whether or not it was the intention of the railroad company to abandon the road for railroad purposes. Certainly, the evidence was sufficient to submit that question to the determination of the jury, and they have found against appellant.

Appellant insists that the evidence in the case was insufficient to show an intention to abandon upon the part of the appellant company. It is true that non-user for a definite fixed period is not of itself sufficient to establish an abandonment, but when "the non-user is accompanied by acts on the part either of the owner of the dominant or servient ténement, which manifest an intention to abandon, and which either destroy the object, for which the easement was created, or the means of its enjoyment, an abandonment will take place." (*Keane* v. *Cannovan, supra; Wyman* v. *Hurlburt*, 40 Am. Dec. 464, and notes; *Davis* v. *Gale*, 32 Cal. 27; *Canny* v. *Andrews*, 123 Mass. 155). In support of its contention upon this point, appellant refers to the case of *Durfee* v. *Peoria, Decatur and Evansville Railway Co.* 140 Ill. 435, which was not an action of ejectment, where the question of intention was submitted to the jury, but was a proceeding in chancery. In the latter case, it was said that the railroad company did not lose its right of way from a failure to occupy the land acquired for that purpose for a period of years, and it was also said that, where a railroad company had entered into a contract with another company for the use of a part of its tracks, the taking up of the rails from a part

of the track and removing them to a new track did not constitute an abandonment. In the case at bar, however, there was something more than mere non-user, and something more than a taking up of the rails from a part of the track. The whole road was completely dismantled by the taking up not only of the rails, but of the ties, of the bridge timbers, of the signs, and of everything else that constituted a railroad fit for operation. It was, therefore, proper to leave it to the jury to say whether there was, in view of the facts and circumstances, an intention to abandon.

*Second*—Appellant claims that the court below erred in permitting evidence to be introduced for the purpose of showing how the road had been operated, that is to say, what kind of trains and freight had been hauled over the same. We think that it was competent to show that the road was built merely for the purpose of hauling coal from the coal mine, and of hauling supplies to the coal mine. As it was a road, built and constructed to haul coal from this mine, and for no other purpose, then, when the coal mine ceased to be fit for use and was abandoned, there was no longer any business for the road. The fact, that the road was built merely as a coal mine road, and for no other purpose, in connection with the abandonment of the coal mine, was a circumstance to be considered by the jury in determining whether it was the intention of the appellant to abandon the road for the railroad purposes, to which it had been applied. The fact, that the road was limited to the carrying of one particular kind of freight, to-wit, coal, together with the fact that the supply of coal became exhausted and naturally left the road without any business, would tend to indicate an intention to abandon the road.

*Third*—Appellant complains that the court below refused to allow the chief engineer of the appellant company, when he was a witness upon the stand, to testify as to what was the intention of the company in regard

to the abandonment of the road. It is true that, at one sitting, the court declined to allow the witness to state what the intention of the company was upon this subject, but indicated his willingness to change his mind, if counsel at a subsequent sitting should produce authorities in favor of their position. At a subsequent sitting, the authorities were produced, and the witness was then allowed to state what the president of the road said upon this subject. The witness testified that he knew nothing about the intention of the company in regard to an abandonment of the road, except what was said to him by the president. He then went on to say that the company was building another road in the southern part of the State, and was unable to obtain rails sufficient to construct the track, and that it determined to take up the tracks from this spur or branch road here in controversy, and carry them to the southern part of the State to construct the road there being built; and this was done. He furthermore says that, when the president of the appellant company was consulted as to whether the rails should be taken up or not, he said "he did not want to abandon it, and instructed me to see our attorney, * * * and ask if taking up the rails would abandon it; I did see him and he said it would not constitute an abandonment; * * * when I asked him (the president) about it he said he did not want them taken up, because we might want to use the track again." The witness further says that the taking up of the track was under his charge, and that he told the men, who were engaged in the work, "to leave the fence, as we did not want to abandon the right of way." What the president said, as testified to by this witness, was substantially that they did not intend to abandon the road, and, therefore, the witness was permitted finally to say what on a previous occasion he was not permitted to say.

In *City of Chicago* v. *Chicago, Rock Island and Pacific Railway Co.* 152 Ill. 561, where the question was what the in-

tention of a railroad company was as to the dedication of certain land to the public use, we said (p. 570): "The rule in this State, and perhaps generally, is, to allow the owner to testify to what his intention actually was, to be considered in connection with all the other facts and circumstances in the case." Here, the appellant company was permitted to introduce proof as to what its intention was in regard to the abandonment of the road. But, in *City of Chicago* v. *Chicago, Rock Island and Pacific Railway Co. supra,* it was further said: "The rule doubtless is, that the intent testified to, not to dedicate, will not be permitted to prevail against unequivocal acts and conduct on the part of the owner inconsistent with such intent, and upon which the public had a right to rely. * * * And where the owner swears to what his intention was, he can be contradicted by his acts and conduct or declarations." So, here, there was before the jury testimony as to what the expressed intention of the appellant company was in regard to the abandonment, and over against this expressed intention were certain acts and conduct of the appellant company, tending to show that there was an intention to abandon the road. The declarations of the company, and its acts and conduct, were all before the jury to be considered by them in determining the question. The expression of an intention not to abandon is not conclusive evidence upon the subject, but is to be considered in connection with the acts and conduct of the party using such expression. Hence, the rule laid down in the *Rock Island case, supra,* was observed here.

*Fourth*—Complaint is also made by the appellant that the Danville Coal Belt Railroad Company was not made a party defendant to the ejectment suit. The company, which was in possession of the premises in controversy, was the appellant. The Danville Coal Belt Railroad Company was not in possession of the premises. The proof discloses that some sort of an arrangement, the

precise nature of which is not made to appear by the testimony, existed between the Danville Coal Belt Railroad Company and the appellant, by which the appellant was permitted to operate the road. It would seem to be a fair conclusion from the evidence that the appellant was either lessee, assignee or grantee, holding under the Danville Coal Belt Railroad Company. "Ejectment is a possessory action and determines none but possessory rights, and hence, at common law, as a general rule, must be brought against the person who is in possession of the premises in controversy, and who wrongfully withholds them from the plaintiff." (10 Am. & Eng. Ency. of Law,—2d ed.—p. 524). Section 6 of the act in regard to ejectment provides that "if the premises, for which the action is brought, are actually occupied by any person, such actual occupant shall be named defendant in the suit; and all other persons claiming title or interest to or in the same, may also be joined as defendants." Section 17 of the same act provides that "every tenant who shall, at any time, be sued in ejectment by any person other than his landlord, shall forthwith give notice thereof to his landlord, or to his agent or attorney, under the penalty of forfeiting two years' rent of the premises in question," etc. Section 18 provides that "the landlord, whose tenant is sued in ejectment, may, upon his own motion or that of the plaintiff, be made defendant in such action, upon such terms as may be ordered by the court." (2 Starr & Cur. Ann. Stat.—2d ed.—pp. 1610, 1614).

While the appellee may have had the right to make the Danville Coal Belt Railroad Company a defendant in the suit below, yet he was not actually obliged to make any other person defendant than the appellant company. The appellant did not make any motion asking that the Danville Coal Belt Railroad Company be made a defendant in the suit. In *Keane* v. *Cannovan*, *supra*, it was said: "The action of ejectment lies only against the occupant of the premises, and to him the plaintiff must look for

compensation for their use." In *Hanson* v. *Armstrong*, 22 Ill. 442, in construing the first clause of section 6 of the Ejectment act, as above quoted, we said (p. 445): "By the provisions of this section the action of ejectment can only be brought against the person in possession of the premises if they are occupied. * * * When occupied, persons not in possession cannot be made defendants to the action. When a recovery is had against the occupant, the judgment binds not only him, but all persons under whom he occupies, together with all persons in privity of estate or possession with himself. When a recovery is had against a tenant, the landlord is bound by it." (See also *Stribling* v. *Prettyman*, 57 Ill. 371).

The evidence in this case shows that, as soon as this road was constructed to the coal mine, the appellant company began to operate it, and continued to operate it up to the time the coal mine was closed, with the exception of a short period when a railroad company, known as the Calumet and Blue Island Company, was permitted, under contract with the appellant company, to haul coal from the mine in question for some steel company. Indeed, one of the witnesses says, that "the Chicago and Eastern Illinois built in from its main line to the curve." It seems that a road about a mile and a quarter long had already been built from a place called Oakwood to the Glenburn mine. This road from Oakwood to the Glenburn mine was actually conveyed by the Glenburn Coal Company to the appellant. The road, built by the Danville Coal Belt Railroad Company, extended from a branch of the appellant to connect with this road running from Oakwood to the mine, and it is the part of the road so extended that, one of the witnesses states, was actually built by the appellant, although it stood in the name of the Danville Coal Belt Railroad Company. One of the witnesses for the appellant in the court below, and an official of the appellant, states that, after the road in question was constructed, it was operated by the Chicago

and Eastern Illinois Railroad Company, the appellant
herein, by an arrangement between the appellant and
the Danville Coal Belt Railroad Company. The evidence
thus establishes a privity between the Danville Coal Belt
Railroad Company and the appellant. Hence, under the
authorities already referred to, it cannot be said that ap-
pellant established an outstanding title in a third person.

Undoubtedly, the defendant in an ejectment suit may
show that either the legal title, or right to possession,
is in a third person, and so defeat the action. In other
words, an outstanding title in a third person, superior
to that of the plaintiff, is, as a general principle, suffi-
cient to defeat a recovery in ejectment, although the
defendant may not be able to connect himself with that
title. But, a defendant who sets up an outstanding title
for a third person as a defense to an action for the re-
covery of possession of real property, must show that
such title is still a living and effective title, not void or
ineffectual. Such outstanding title must be one, which
would enable the third party himself to maintain an ac-
tion for the possession of the land in controversy against
both the plaintiff and defendant. (10 Am. & Eng. Ency.
of Law,—2d ed.—p. 532; Newell on Ejectment, pp. 652,
653; 3 Wait's Actions and Defenses, pp. 109, 110). The
claim on the part of appellant, that it has here shown
an outstanding title in the Danville Coal Belt Railroad
Company as a third person, and that such title is supe-
rior to that of the plaintiff, cannot be sustained. There
is a privity of interest between the Danville Coal Belt
Railroad Company and the appellant, and consequently,
a judgment against the appellant, as the occupant of
the premises, will bind the Danville Coal Belt Railroad
Company in view of the relation existing between them.
The defense of an outstanding title in a third person can
not be set up here, because, even if it be admitted that
the Danville Coal Belt Railroad Company acquired an
easement by virtue of the condemnation proceeding, the

201—28

question still remains whether it abandoned the interest so acquired by it by the dismantling of the road, and the failure to operate it. The fee simple title is in appellee, subject to the right of user for railroad purposes. Hence, only the right of possession is here involved, and this right of possession depends upon the question, whether or not the use of the premises has been abandoned for railroad purposes.

*Fifth*—Complaint is also made, by the appellant that the court erred in giving the third instruction, which it gave on behalf of the appellee. This instruction was as follows:

"The law provides that, in case of abandonment of said right of way for the purpose of maintaining and operating thereon a railroad, the right to the use and possession of it reverts to the one having the fee simple title thereto."

The objection made to the instruction is, that it omits the element of intention to permanently abandon the strip of land in question. The idea of intention is embodied in the idea of abandonment. There could be no abandonment by appellant without an intention to abandon. The jury could not have been misled by the instruction in view of the fourth instruction, which was given for the appellee. The fourth instruction was as follows:

"While, under the law, there cannot be an abandonment without an existing intent to abandon, yet you are the sole judges, from the evidence, whether there was such intent on the part of the defendant. In reaching a conclusion either way upon the question, you should carefully consider all the evidence and all the facts and circumstances shown by the evidence."

The latter instruction stated clearly to the jury that there could not be an abandonment without an intention to abandon. The same objection is made to the fifth instruction given for the appellee, and the same answer is applicable. The court also gave two instructions for the

appellant at its request, which told the jury distinctly that the appellee must prove, by a preponderance of the evidence, that there was an intention to permanently abandon said strip of land as a right of way for a railroad. There was no contradiction between the instructions thus given for the appellant, and those given for the appellee.

Appellant also complains that the court erred in refusing to give the instructions asked by it numbered 4 and 6. These instructions were properly refused, because they substantially told the jury that there was an outstanding title in the Danville Coal Belt Railroad Company in view of the condemnation proceeding in question, and that the existence of this outstanding title was a defense to the action of the appellee. For the reasons already stated, the defense of outstanding title in a third person was not established.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*