Benjamin N. Branch, Jr., *vs*. The Central Trust Company of Illinois, Trustee, *et al*.—(The Central Trust Company of Illinois, Trustee, Appellant, *vs*. The Chicago Title and Trust Company *et al*. Appellees.)

*Opinion filed February 18, 1926—Rehearing denied April 9, 1926.*

1. Railroads—*grant of right of way to railroad company does not convey fee.* The grant to a railroad company of a right of way over, through and upon land described does not convey the fee to any part of the land described but only an easement or the right to use the land for railroad purposes, and upon abandonment of the use of the land for railroad right of way or for depot grounds the interest of the railroad company terminates, and the owner of the fee, or his heirs or grantees, may by ejectment recover the possession of the land in which the right of way existed. (*Lyman* v. *Suburban Railroad Co.* 190 Ill. 320, explained.)

2. Limitations—*possession must have been hostile and adverse for full period of limitation.* The running of the Statute of Limitations depends upon actual possession under a claim of ownership which has been hostile and adverse, visible and notorious, exclusive and continuous, during the full statutory period of limitation.

3. Same—*what must be shown where possession was not originally adverse.* Where the party claiming under the Statute of Limitations has acquired possession in subserviency to the owner of the fee, a clear and positive assertion of an adverse right definitely brought to the knowledge of such owner must be shown before any foundation can be laid for the operation of the statute.

4. Same—*presumption is in favor of the true owner.* Adverse possession cannot be made out by inference or implication, for the presumption is in favor of the true owner, and the proof to establish the adverse possession under the statute must be strict, clear, positive and unequivocal.

5. Same—*abandonment of right of way by a railroad company does not make its possession adverse.* The fact that a railroad company, having been granted a right of way for railroad purposes, ceases to use the land for a railroad right of way and depot grounds does not change the character of its possession and make such possession adverse, where subsequent acts of the railroad company indicate only a claim to the right of way and an intention to preserve the easement and do not indicate any purpose to make any claim as owner of the fee.

APPEAL from the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding.

FRANK H. PARTRIDGE, (JAMES A. DONNELLY, of counsel,) for appellant.

SHERMAN C. SPITZER, GEORGE GILLETTE, and ROBERT HUMPHREY, (CHARLES L. BARTLETT, of counsel,) for appellees.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

Benjamin N. Branch, Jr., filed a bill in the superior court of Cook county for the partition of certain real estate described as lot A of Mandell & Hyman's subdivision of the east half of the southwest quarter of section 20, township 39, north, range 13, east of the third principal meridian, between the complainant and the Central Trust Company of Illinois, who were alleged to be owners each of one-half of the property in fee simple. Besides the Central Trust Company, the Chicago Title and Trust Company, as executor and trustee under the will of Edmund A. Cummings, and several individuals, were made defendants under the allegation that they claimed some interest in the premises, the exact nature of which was unknown to the complainant, but that such interest, if any, was subject to the rights and interests of the complainant and the Central Trust Company. The Central Trust Company answered, admitting the allegations of the bill. The Chicago Title and Trust Company, as executor and trustee, and some of the individual defendants, answered, denying that the complainant and the Central Trust Company were the owners of the premises or that either of them was the owner of any interest therein, and averring that the defendants, except the Central Trust Company, by various conveyances had become, respectively,

320—28

the owners of different parts of the premises in severalty. The defendants not answering were defaulted, and the cause was referred to a master, who reported that neither the complainant nor the Central Trust Company had any interest in the premises and recommended that the bill be dismissed for want of equity. Objections of the complainant and the Central Trust Company to the report were overruled by the master, exceptions to the report were overruled by the court, and a decree was entered dismissing the bill for want of equity, from which the Central Trust Company has appealed.

It appears from the evidence that on June 9, 1892, Edward D. Mandell was the owner of the east half of the southwest quarter of section 20, township 39, north, range 13, east of the third principal meridian, and on that day he recorded a plat of a subdivision of the tract under the name of Mandell & Hyman's subdivision. On July 16, 1892, he conveyed to the Chicago and Southwestern Railroad Company "a railroad right of way and depot grounds over and upon the whole of lot A of Mandell & Hyman's subdivision of the east half of the southwest quarter of section twenty (20), township thirty-nine (39) north, range thirteen (13) east of the third principal meridian, situate in the town of Cicero, in the county of Cook and State of Illinois. To have and to hold said lot A for a railroad right of way and depot grounds unto said Chicago and Southwestern Railroad Company, its successors and assigns for so long as the same shall be used for a railroad right of way and depot grounds, subject, however, to the following rights, which are hereby expressly reserved to said grantor and his heirs and assigns and to the public, to-wit:

"*First*—To cross, open, extend, lay out and improve all streets now shown upon the recorded plat of said Mandell & Hyman's subdivision west of the east line of Cicero avenue, over, under, above and across said lot A, both on, over and under the surface thereof at any and all times, all

of which rights also extend to and are hereby made to extend to the proper public authorities, who may open, extend and improve said streets.

"*Second*—If said company, its successors or assigns shall at any time abandon said railroad right of way and depot grounds over and upon said lot A, or shall use said lot A or attempt to use the same for another purpose than for said railroad right of way and depot grounds, then the right and privilege hereby granted to it and them shall thereby be forfeited and be of no further force and effect, and from henceforth said lot A shall revert to said grantor and to his heirs and assigns forever, and be held by him or them forever freed and discharged of and from the right hereby granted to said company."

The Chicago and Southwestern Railroad Company went into possession of lot A, a railroad known as the Chicago and Southwestern Branch was constructed on it throughout its length and was conveyed to the Chicago and Northern Pacific Railroad Company. All the property of the Chicago and Northern Pacific Railroad Company was sold under foreclosure proceedings, and in 1897 the title vested in the Chicago Terminal Transfer Railroad Company. In 1910 all the property of the Chicago Terminal Transfer Railroad Company was sold under a decree of foreclosure and the title vested in the Baltimore and Ohio Chicago Terminal Railroad Company. In 1922 the Baltimore and Ohio Chicago Terminal Railroad Company, having abandoned the use of lot A for railroad purposes, conveyed by quitclaim deed all interest in the lot to the Central Trust Company of Illinois as trustee, and the Central Trust Company, as trustee, conveyed one-half to Benjamin N. Branch, Jr., the complainant. Edward D. Mandell died in 1897, leaving a will, and in 1910 the trustees under his will, and his heirs and devisees, executed a deed of conveyance of lot A, subject to all rights of any railroad company or companies then occupying or having any interest in any part of the

premises, to Charles P. Walker, Jr. Walker conveyed to Edmund A. Cummings, who died in 1922, leaving a will, whereby he devised the premises to the Chicago Title and Trust Company as trustee. The other defendants, except the Central Trust Company, derive their title through the Chicago Title and Trust Company as trustee.

Lot A is a narrow strip of ground extending through the half quarter section from Austin avenue (or Sixtieth avenue) on the east to Lombard avenue on the west, and is about half way between Sixteenth street and Twenty-second street, on the north and south, respectively. It is 66 feet wide, except about 250 or 300 feet at the east end, where the width expands to about 160 feet at the greatest width. The Chicago and Northern Pacific Railroad Company went into possession of the railroad which was constructed by the Chicago and Southwestern Railroad Company and ran its trains over that railroad until the foreclosure, in 1897. Upon the conveyance to it the Chicago Terminal Transfer Railroad Company went into possession of the property and operated its trains over the railroad track. The operation of trains over the track was discontinued before 1900. There has never been any structure on the road except the single railroad track and a depot building. After 1899 no repairs were made on the railroad track. The rails rusted, the ties rotted, the ballast disintegrated and the road was overgrown with weeds. The depot was occupied as a residence. The Chicago and Southwestern Railroad Company and its successors were in the continuous and exclusive possession of the road from July 16, 1892, until about April 15, 1922. They listed and scheduled the Chicago and Southwestern Branch for taxation for the years 1893 to 1921, inclusive, as railroad track. The State Board of Equalization assessed the Chicago and Southwestern Branch as railroad track for each of those years. Taxes were extended against it as railroad track, and the taxes so levied during that time were paid by the Chicago and

Southwestern Railroad Company and its successors. The Baltimore and Ohio Chicago Terminal Railroad Company removed the rails and ties between February 6, 1922, and April 15, 1922. On February 6, 1922, the trustees of the town of Cicero passed an ordinance giving the Baltimore and Ohio Chicago Terminal Railroad Company the right to operate and lay tracks upon Fifty-sixth avenue south of Sixteenth street for switching purposes, upon the condition, among others, that the railroad company should, within fifteen days after the passage, approval and acceptance of the ordinance, take up and remove all tracks, rails, ties and other equipment of the railroad then lying within the town of Cicero and west of the east line of Fifty-sixth avenue, and should immediately abandon such portion of its right of way as lay west of South Fifty-sixth avenue and cease to use any portion of such right of way for the operation of trains, the ordinance to become effective after its passage and approval, provided the company should accept it in writing within sixty days after its passage. Within sixty days after the passage of the ordinance it was accepted in writing by the railroad company, and the railroad company removed all its rails, ties and other railroad material from that portion of its right of way lying west of South Fifty-sixth avenue, including lot A. In 1909 David B. Lyman, as trustee, began a suit against the Suburban Railroad Company and the Chicago Terminal Transfer Railroad Company for the purpose of having the right of way granted to the Chicago and Southwestern Railroad Company in section 21 decreed to be terminated and vested in the complainant as trustee, free of any claim of the railroad companies. In that case the Chicago Terminal Transfer Railroad Company filed a cross-bill, which set up the ordinance of the town of Cicero granting a right to the Chicago and Southwestern Railroad Company to construct and operate the Chicago and Southwestern Branch, setting up, also, certain leases to the Suburban Railroad Company for the operation of passen-

ger trains over the Chicago and Southwestern Branch, and alleging that the Suburban Railroad Company had failed and refused to operate trains, and that under the suit brought by Lyman, unless trains were operated over the Chicago and Southwestern Branch the Chicago Terminal Transfer Railroad Company would be deprived of and lose a part of its right of way constituting the Chicago and Southwestern Branch. On June 9, 1914, Maclay Hoyne, State's attorney of Cook county, filed a petition for leave to file an information in the nature of *quo warranto* against the Baltimore and Ohio Chicago Terminal Railroad Company for illegally maintaining, without any warrant or charter for so doing, railroad tracks upon the streets and highways of the town of Cicero. In opposition to this application the respondent, the Baltimore and Ohio Chicago Terminal Railroad Company, filed the affidavit of its general attorney, Jesse B. Barton, stating under oath that the Northern Pacific Railroad Company operated freight trains on the Chicago and Southwestern Branch until the purchase of the property by the Chicago Terminal Transfer Railroad Company, on July 1, 1897; that the latter company and the Baltimore and Ohio Chicago Terminal Railroad Company had in succession, since the first day of July, 1897, transacted and performed all of the freight traffic business of the Chicago and Southwestern Branch that had been offered to them or that could be secured by them, and had not transacted any freight business between Fifty-sixth avenue and Harlem avenue on the Chicago and Southwestern Branch for the sole reason that they could not secure any freight business to perform thereon; that the rails and other parts of the railroad had never been removed by either of the railroad companies nor abandoned by them in any other sense than that they could not secure business to transact thereon. On November 4, 1913, the Baltimore and Ohio Chicago Terminal Railroad Company filed its bill in the United States district court for the northern district of

Illinois against the town of Cicero, alleging, among other things, the construction of the Chicago and Southwestern Branch by the Chicago and Southwestern Railroad Company, the ordinance of the town of Cicero granting the right to construct and operate the railroad, the successive conveyances from the Chicago and Southwestern Railroad Company and its grantees to the complainant, and alleging, also, that on October 27, 1913, the board of trustees of the town of Cicero passed an ordinance attempting to annul and rescind the ordinance granting the Chicago and Southwestern Railroad Company the right to construct and operate the Chicago and Southwestern Branch; that certain persons had torn up the railroad tracks of that branch where the same crossed Fifty-seventh and Fifty-eighth avenues; that the complainant sent its employees to replace the tracks, but they were driven from its private property by the police officers of the town of Cicero, and praying that the ordinance of October 27, 1913, be declared null and void and that the town of Cicero be enjoined from interfering with complainant in the re-laying of any of its railroad tracks along the right of way within the town of Cicero. On April 4, 1916, a decree was entered in the cause, finding that an ordinance was passed by the board of trustees of the town of Cicero on November 10, 1913, repealing the ordinance passed on October 27, 1913, and reviving the ordinance of August 2, 1890, permitting the Chicago and Southwestern Railroad Company to construct and operate the Chicago and Southwestern Branch, and taxing the costs against the defendant.

The appellant claims that the decree in the present case should be reversed for the reasons (1) that Mandell's deed to the Chicago and Southwestern Railroad Company conveyed an estate upon condition subsequent, and that no forfeiture having been declared or re-entry made by Mandell in his lifetime or by his heirs after his death, the deed of his trustees and heirs conveyed no title or right of any kind to

Walker, and the remote grantees of Walker have no interest in the land; (2) that the appellant has acquired title under the twenty-year Statute of Limitations; (3) that the appellant has acquired title under the Statute of Limitations by seven years' possession with payment of taxes under color of title; (4) that the decree does not find and declare the interests of the parties. The appellees, (except Branch,) on the other hand, contend that Mandell's deed was not a conveyance of the land upon a condition subsequent but merely a grant of an easement in the land so long as it should be used for a railroad right of way and depot grounds, leaving the fee in the grantor subject to the easement, and upon the abandonment of the use of it for such purposes the right of the grantee ceased by the terms of the grant, and the grantor or his heirs or grantees, being owners of the fee, held the land free from the easement. As to the Statute of Limitations, the appellees (except Branch) contend that it has no application, because the possession of the Chicago and Southwestern Railroad Company and its successors in title was at no time adverse to the title of Mandell and the successors to his title, since it was always under the claim only of a right of way for railroad purposes and not of an ownership in fee. The appellees (except Branch) also contend that since neither the complainant nor the Central Trust Company has any interest in the land, they have no right to call on the court to find the interests of the other parties to the suit.

The grant to a railroad company of a right of way over, through and upon land described does not convey the fee to any part of the land described but only the right to use the land for railroad right of way purposes. (*Wiggins Ferry Co. v. Ohio and Mississippi Railway Co.* 94 Ill. 83; *Walker v. Illinois Central Railroad Co.* 215 id. 610; *Illinois Central Railroad Co. v. Houghton,* 126 id. 233; *Illinois Central Railroad Co. v. O'Connor,* 154 id. 550.) In the first of the cases cited it became important to determine

the character of interest conveyed by a deed of the Wiggins Ferry Company, which purported by its language to give, grant and convey to the grantee, the Ohio and Mississippi Railway Company, "the right to construct, maintain and use in, through, upon and over the piece or parcel of ground hereinafter described, all such railroad tracks, depots, warehouses and other buildings and erections as the said party of the second part shall find to be necessary or convenient to be constructed, maintained or used for the purpose of transacting the business of the said party of the second part, and to keep thereon, without disturbance, all property of every description belonging to, or which may be in the possession, charge or custody of, the said party of the second part, and to take upon and over the said piece or parcel of ground all persons and property, and to use the said piece or parcel of ground in the transaction of the business of the said party of the second part as the said party of the second part may find necessary or convenient." Then follow the descriptions of two pieces of land, after which is the following: "To have and to hold the said several rights and easements in the said two several parcels of ground above described, unto the said party of the second part, so long as the same shall be used and employed for the uses and purposes of the Ohio and Mississippi railroad, as herein specified, and for no other purposes, even forever." It was held that the instrument clearly conveyed no land but merely an easement,—an incorporeal hereditament,—in which the grantee took a freehold estate of inheritance, which might last forever if the rights and easements granted were used and employed in the manner prescribed in the act but would be terminated by a failure so to use and employ them.

The second case cited required the construction of a deed by which Stephen A. Douglas conveyed to the Illinois Central Railroad Company, "for the purpose of constructing, maintaining and operating thereon a single or double-

track railroad, with all its necessary appurtenances, and for all uses and purposes connected with the construction, repair, maintenance and complete operation of said railroad, the right of way for the same over and through the following tracts or parcels of land situate, lying and being in the county of Cook and State of Illinois: * * * To have and to hold the same unto the said Illinois Central Railroad Company, their successors and assigns forever, for all lawful uses and purposes for which the right of way could have been obtained in pursuance of the charter of said company." It was held that the railroad company did not acquire a fee in the land by the deed in question but only the right to use the land described perpetually for railroad right of way purposes; that the interest which the appellee acquired in the strip was absolute for the purposes for which it was acquired so long as it was used for railroad right of way purposes, and that the exclusive possession of the land was necessarily vested in the railroad company to fulfill the object of the grant.

These cases make it clear that in this State a grant of a right of way to a railroad company does not convey a fee in the land but conveys an easement, only; and the same view has been expressed by the courts of other jurisdictions. (*East Alabama Railway Co.* v. *Doe,* 114 U. S. 346; *Cincinnati, Indianapolis, St. Louis and Chicago Railway Co.* v. *Geisel,* 119 Ind. 78; *Jones* v. *VanBochove,* 103 Mich. 98; *Ottumwa, Cedar Falls and St. Paul Railway Co.* v. *McWilliams,* 71 Iowa, 164; *Blakely* v. *Chicago, Kansas and Northern Railway Co.* 46 Neb. 192; *Uhl* v. *Ohio River Railroad Co.* 51 W. Va. 106.) A conveyance of land by general warranty deed to a railroad company for railroad purposes was held in *Chouteau* v. *Missouri Pacific Railroad Co.* 122 Mo. 375, not to convey a fee, and a deed of general warranty which by its language purported to convey to a railroad company land described as "all the lands in the southwest quarter of section 15, township 9, south of range 7, west,

lying within 50 feet of the center line of the main track of said railroad," without any reference to the purpose of the conveyance or the use of the land, was construed by the Supreme Court of Kansas as conveying an easement, only, where it appeared that the railroad company had surveyed and staked out the line for its railroad and when about to begin the construction of the railroad over the grantor's land purchased from him the strip of land 100 feet wide running through the quarter section. *Abercrombie* v. *Simmons,* 71 Kan. 538.

Section 13 of article 2 of the constitution provides that the fee of land taken for railroad tracks without consent of·the owners thereof shall remain in such owners subject to the use for which it is taken. The easement acquired by the railroad company ceases upon abandonment by the company, and the owner of the fee, or his heirs or grantees, may recover by ejectment the possession of the land in which the right of way had existed. (*Chicago and Eastern Illinois Railroad Co.* v. *Clapp,* 201 Ill. 418.) The constitution, the statute and the courts recognize the existence of the fee in the original owner and of the easement in the railroad company, and if this is the nature of estates where the right of way is acquired by condemnation, there is no reason why the parties may not by contract create the same estates. This is what was done by the Mandell deed. Its language is plain. The grant is of railroad right of way and depot grounds, to have and to hold unto the grantee for so long as the same shall be used for railroad right of way and depot grounds. Upon the abandonment of the use of the right of way for a railroad right of way and depot grounds the interest of the railroad company terminated. At the date of its deed to the Central Trust Company, on April 25, 1922, the railroad company had no interest under the deed from Mandell and the successive conveyances of their interest by his grantees, and therefore its deed to the Central Trust Company conveyed no interest.

There is no occasion to discuss the questions argued by the appellant of the difference between conditions subsequent and conditional limitations and their effect upon the estate conveyed and the power of the grantees of the reversioner to declare a forfeiture. There was no forfeiture of any right. The easement expired by its own limitation when the land was no longer used for a railroad right of way and depot grounds, and the owner of the fee became entitled to the possession.

The appellant has cited the cases of *Lyman* v. *Suburban Railroad Co.* 190 Ill. 320, and *Golconda Northern Railway* v. *Gulf Lines Connecting Railroad,* 265 id. 194, in support of its contentions that the Mandell deed is to be construed as conveying an estate upon a condition subsequent, and that a breach of such a condition can be taken advantage of only by the grantor himself or his heirs or devisees and not by his grantees. In the former case a bill was filed by the grantor of a right of way to the Chicago and Southwestern Railroad Company across section 21, being a short distance east of the Mandell tract, upon the express conditions that the grantee would erect upon its right of way upon section 21 a passenger station at Robinson avenue on or before August 1, 1891, also on Central avenue on or before May 1, 1893, and that it and its successors and assigns would construct, operate and maintain a railroad upon said right of way. The agreement also contained the following provisions: "The easement hereby granted is made upon the express agreement and understanding by the party of the second part, its successors and assigns, that it will construct, operate and maintain the said railroad and perform all of the conditions and provisions herein contained on its part to be performed as herein provided, and that any failure on its part so to do shall forfeit all of its rights under this contract." It was conceded that no passenger station had been erected at Central avenue upon section 21, and the bill averred that the railroad company had ceased to oper-

ate a railroad over the right of way and that the right of
way was unused. The object of the bill was to obtain a
decree that all the rights, privileges and easements which
had been granted by the trustees of the Grant Land As-
sociation to the Chicago and Southwestern Railroad Com-
pany in section 21 had terminated and that the same were
vested in the complainant as trustee of the Grant Land As-
sociation, and that he be decreed, as such trustee, to hold
the right of way clear of any claim of the defendants. The
parties by the allegations of the bill and the demurrer there-
to treated the grant as having been made upon conditions
subsequent for the erection of a passenger station at Cen-
tral avenue and for the operation and maintenance of a
railroad across section 21, and the defendants argued that
such conditions were contrary to public policy and void and
the right of way could not be forfeited by a failure to com-
ply with such void conditions. In the opinion of the court,
after a statement of the pleadings, it is said that the agree-
ment granted to the railroad company an interest in the
right of way upon conditions subsequent, which interest was
liable to be defeated upon the non-performance of such
conditions, and no question of public policy was involved
which required a holding that the appellees could retain the
interests and rights conferred by the agreement without
performing the conditions. There was no contest over the
question whether the grant was upon conditions subsequent
or not and the court made no decision of the question.
There was no question that the condition for the building
of a passenger station at Central avenue by May 1, 1893,
was a condition subsequent, and the suit was brought by
the survivor of the trustees, who were grantors. No ques-
tion arose as to the right to declare a forfeiture. There
was no discussion of the interest conveyed by the use of
the term "right of way." That interest had been decided
in *Wiggins Ferry Co.* v. *Ohio and Mississippi Railway Co.
supra,* to be an easement, which would be lost by the fail-

ure to use it. It was so held also in *Walker* v. *Illinois Central Railroad Co. supra;* and in *Chicago and Eastern Illinois Railroad Co.* v. *Clapp, supra,* it was held that such easement was lost by abandonment and the owner of the fee could recover the possession of the land in ejectment. The decision of the *Lyman case* is right, but the assumption that it decided that the conveyance of a right of way to a railroad company is upon a condition subsequent is wrong. The conditions subsequent, the breach of which it was held could not be availed of by anyone but the grantor himself or his heirs or devisees, were express conditions providing for the completion of the railroad by a certain fixed date, and there was no question of an abandonment of the right of way.

The appellant's claim of title under the Statute of Limitations is based upon the argument that upon the cessation of the running of trains over the railroad track in 1898 the right of possession accrued to Mandell's heirs or devisees and that the Statute of Limitations began to run against them from that time. The running of the Statute of Limitations depends upon actual possession under a claim of ownership which has been visible and notorious, exclusive and continuous, during the full period of limitation fixed by the statute, and it must also have been hostile or adverse during all that time. (*Zirngibl* v. *Calumet and Chicago Canal and Dock Co.* 157 Ill. 430; *Illinois Central Railroad Co.* v. *Hatter,* 207 id. 88; *Stowell* v. *Lynch,* 269 id. 437; *Wilkinson* v. *Watts,* 309 id. 607.) The railroad companies under whose title the appellant claims never made any claim of title adverse to the Mandell title under which the appellees (except Branch) claim. Their possession has been held under a claim of a railroad right of way which, though an easement only, gave them the right of exclusive possession of the land. They listed and scheduled the property only as railroad track. They paid taxes on it as railroad track. There was no change in the manner of their possession

after the cessation of the operation of trains except that trains were no longer run. The track and the land lay idle, but there is no evidence of any claim of title by any of the companies different from that under which entry was first made. When suit was brought to prevent the Suburban Railroad Company from running trains over the railroad they filed a cross-bill, in which they stated that if they were prevented from operating trains they would be deprived of and lose a part of their railroad right of way constituting the Chicago and Southwestern Branch. When application was made for leave to file an information in the nature of *quo warranto* they took the position that they had not abandoned their railroad right of way, and when the town of Cicero undertook to repeal the ordinance authorizing them to operate their railroad in the town they sought an injunction to prevent the town from interfering with their repairing of their track. All these acts and declarations were consistent with the right under the deed. They were not hostile to the Mandell interest and they did not indicate a claim of ownership in fee but only of such right as was conveyed to them by the Mandell deed. Having acquired possession in subserviency to the owner of the fee, a clear and positive assertion of an adverse right definitely brought to the knowledge of such owner must be shown before any foundation can be laid for the operation of the statute. (*Thompson* v. *Toledo, St. Louis and Western Railroad Co.* 271 Ill. 11; *Kirby* v. *Kirby,* 236 id. 255; *Andrews* v. *Floyd,* 308 id. 559; *Jaster* v. *Spikings,* 312 id. 170; *Zeller* v. *Eckert,* 45 U. S. 289.) However long continued their possession may have been under these circumstances, it could not ripen into a title under the Statute of Limitations. Adverse possession cannot be made out by inference or implication, for the presumptions are all in favor of the true owner, and the proof to establish it must be strict, clear, positive and unequivocal. *Zirngibl* v. *Calumet and Chicago Canal and Dock Co. supra.*

If the railroad company, upon ceasing to run trains over the track, were to be regarded in law as no longer using the land for a railroad right of way and depot grounds, this fact, alone, would not change the character of its possession and make such possession adverse. Its claim, so far as made known, was the same as before the trains ceased running,—a railroad right of way under the Mandell deed subservient to the title of the grantor. It insisted upon such title, and no more, when it listed its right of way for taxation; when it insisted in the *Lyman case,* in 1909, by its cross-bill, that it would be deprived of a part of its right of way unless trains were operated over it; when it opposed, in 1914, the filing of an information in the nature of *quo warranto* for the illegal maintenance of railroad tracks on the streets of the town of Cicero on the ground that it had performed all the freight traffic business which it had been offered or which it could secure; and when, in 1913, it filed a bill to enjoin the town of Cicero from enforcing an ordinance rescinding the ordinance granting it the right to construct and operate its railroad and from interfering with the re-laying of its railroad tracks on its right of way in the town of Cicero. All of these acts indicate the claim of the railroad company to a railroad right of way and its intention to preserve the easement but do not indicate any purpose to make any claim as owner of the fee.

The appellant has no right to complain that the court did not declare the interests of the parties to the suit in the land. The decree found that the complainant and the appellant had no interest in the land, and when it had done so it did not concern them what the interest of anybody else in the land might be. There could be no partition of the land under the bill, and it was properly dismissed for want of equity.

The decree is affirmed.

*Decree affirmed.*