## GEORGE W. NORTON v. DULUTH TRANSFER RAILWAY COMPANY and Others.[1]

March 19, 1915.

Nos. 19,089—(280).

**Deed — conveyance of easement.**

1. The conveyance of a strip of land to a railroad company for a right of way, "to have and to hold the same, * * * for and so long as the same shall be used for" railroad purposes, held to convey an easement only, and not the absolute fee simple title.

**Abandonment of right of way — evidence.**

2. An easement so held may be lost by abandonment, and the evidence is *held* to support the findings of the trial court that there was an intentional abandonment of the right of way involved in this action.

**Exclusion of evidence.**

3. The court did not err in its rulings excluding certain evidence.

Action in the district court for St. Louis county by the sole surviving executor of the last will and testament of George W. Norton,

---

[1] Reported in 151 N. W. 907.

Note.—On the right of reversion on abandonment of road deeded to railway company, see note in 1 L.R.A.(N.S.) 806.

As to abandonment of private way by nonuser or improvements inconsistent with its use, see notes in 22 L.R.A.(N.S.) 880 and 42 L.R.A.(N.S.) 741.

deceased, to remove a cloud on plaintiff's title created by a deed from the executors of the last will and testament of said deceased to the Duluth Transfer Railway Co. conveying to that company an easement for right of way purposes, and for a permanent injunction restraining defendant Northern Pacific Railway Co. from interfering in any way with the land. The Northern Pacific Railway Co. in its separate answer alleged that it had succeeded to all the rights of the transfer company and denied that the rights conveyed by the deed had ever been abandoned or the rights therein conveyed ever reverted to the grantor, and alleged that defendant was the owner of the land described with perpetual right to use and occupy the same for the purposes therein expressed. The case was tried before Ensign, J., who made findings and ordered judgment in favor of plaintiff. Defendant's motion for amended findings was denied. From an order denying its motion for a new trial, defendant appealed. Affirmed.

C. W. Bunn and Washburn, Bailey & Mitchell, for appellant.

A. L. Agatin, for respondent.

BROWN, C. J.

Action to determine the title to real property in which plaintiff had judgment and defendant appealed from an order denying a new trial.

The facts are as follows:

The land in controversy was conveyed to the Duluth Transfer Railway Co. for right of way purposes, by the executors of the estate of George W. Norton, deceased, who was the owner of the larger tract out of which the land in question was taken. The grantee in that conveyance was a corporation duly organized under the laws of the state in the year 1890, for the purpose of operating transfer lines of railroad within the city of Duluth and points beyond the boundaries thereof, and it was granted the use of certain streets of the city, and of West Duluth, upon condition that it serve all railroad lines entering the city, and to permit such other railroad companies to use its tracks and facilities upon payment therefor.

The transfer company thereafter constructed its lines of road

within and without the city, one of which extends from within the city to West Duluth and from a point near Spirit Lake to a connection with the old Duluth & Winnipeg Railroad. The company conducted its affairs for some time but finally became insolvent, and in receivership proceedings, all its property rights, and privileges were, some time in the year 1896, transferred to a receiver of the corporation, who continued the operation of its affairs until January, 1902, when in foreclosure proceedings the property, franchises and privileges were sold to the bondholders of the company, who thereupon organized the Duluth Transfer Railroad Co., and all rights so acquired by them were transferred and set over to the new corporation. The organization of this corporation was for the sole purpose of taking over the property and affairs of the insolvent concern, and of continuing the conduct of its business, and the new company acquired the same, subject to the obligations which had theretofore become attached to the franchises and privileges so transferred. Thereafter, in May, 1902, the Transfer Railroad Co. sold and conveyed to the defendant Northern Pacific Railway Co., all lines of railroad, tracks, switches and other property previously acquired by it through the foreclosure and receivership proceedings from the insolvent Transfer Railway Co., and said Northern Pacific Co. has since owned and controlled the same. This sale included the right of way in question, which formed a part of the transfer company line, and for a considerable distance paralleled the right of way of the St. Paul & Duluth Railroad Co., the line of which extends between Duluth and St. Paul and Minneapolis. Prior to the purchase of the transfer company line the Northern Pacific Co. had acquired by purchase the St. Paul & Duluth line, and has at all times since operated trains between Duluth and Fond du Lac over a line which parallels the line of the transfer company. Subsequent to acquiring both these lines of road and in the fall of the year 1902, defendant Northern Pacific Co. abandoned the transfer line. The facts in reference to which abandonment are stated clearly in the findings of the trial court, and a stipulation of facts submitted by the parties on the trial below which, as therein stated, are substantially as follows: That upon the acquisition of said lines of road the Northern

Pacific Co. caused all the rails of the transfer line, together with the bridges and trestles thereof, to be taken up, dismembered and wholly removed therefrom through the entire length of the transfer line from a point on the main line thereof at or near Sixty-third avenue in West Duluth, to the terminal or end of the same; and the line so taken up included the right of way in dispute. The track has never been relaid, or the right of way used by defendant for railroad or other purposes. The trial court found that on or about December 1, 1912, two days prior to the commencement of the action, the defendant Northern Pacific Co. entered upon the land, not for the purpose of restoring or relaying the track thereon, but in an effort to prevent another railroad company from acquiring the same for railroad purposes in condemnation proceedings. Whether this finding is fully sustained by the evidence is not of controlling importance, for the fact remains that for 10 years the company made no use of the land for right of way or other purposes, and during that time made no attempt to relay its tracks thereon, until the appearance of the other railroad. This fact clearly appears.

The trial court found, from the facts stated, and other facts and circumstances not necessary to here repeat, that there was a complete abandonment of the land by the Northern Pacific Co., that all rights and interests acquired under and through the deed to the transfer company terminated, and that the estate of Norton, the grantor, became fully reinvested with the title to the same free and clear of any claim on the part of the defendant railroad company.

It is contended on the part of appellants: (1) That the Norton deed to the transfer company conveyed an absolute fee title limited only as to use, namely, railroad right of way purposes, and that a failure to use it for that purpose or at all would not terminate the absolute title thus granted; (2) that the findings of the court to the effect that the land was abandoned by defendant Northern Pacific Co., thereby terminating its easement and title, are not sustained by the evidence; and (3) that the court erred in excluding certain evidence, offered by defendant for the purpose of showing the intent of its officers in removing the track, ties, and bridges from the land,

129 M.—9.

and abandoning the use thereof for railroad purposes during the period stated, namely, from 1902 to December, 1912.

1. The first contention involves an examination of the Norton deed, its terms and provisions, for the purpose of ascertaining the intent of the parties in its execution. This intent is to be gathered, not from any particular clause or provision thereof taken by itself, but from the whole instrument, construing all its provisions together. 13 Cyc. 605; Flaten v. City of Moorhead, 51 Minn. 518, 53 N. W. 807, 19 L.R.A. 195; Witt v. St. Paul & N. P. Ry. Co. 38 Minn. 122, 35 N. W. 862. The deed, after naming and describing the parties, provides as follows:

"WITNESSETH: That the said parties of the first part, in consideration of the sum of thirteen hundred and twenty-five dollars to them in hand paid by the said party of the second part, the receipt of which is hereby acknowledged, do, by these presents, grant, bargain, sell and convey unto the said party of the second part, its successors and assigns, all that tract or parcel of land lying and being in the county of St. Louis, and state of Minnesota, described as follows to wit: (here follows a description of the land conveyed).

"TO HAVE AND TO HOLD THE SAME, Together with all the hereditaments and appurtenances thereunto belonging or in anywise appertaining, unto the said party of the second part, its successors and assigns, for the uses and purposes of said party of the second part for and so long as the same shall be used as a right of way for tracks and side tracks and a railroad way for its railroad cars, locomotives and trains and for proper appendages to such track or tracks and railway, and for any other uses consistent with or embraced in the purposes and general nature of the business of said grantee, as expressed in its articles of incorporation."

Aside from the names of the parties and the description of the land this quotation includes all the provisions of the conveyance. A reading of the same leaves in our minds no fair doubt of the intention of the parties. The land conveyed was taken from a larger tract and was a narrow strip 75 feet wide by about 3,000 in length. The railroad company desired it for a particular purpose, namely, as a right of way, and the grantors were willing to convey for that

use. The deed contains no language indicative of an intention that an absolute and unqualified title should pass to the grantee. The significant word, generally found in deeds of real property, "forever", does not follow the clause "to have and to hold the same," but instead thereof it reads "to have and to hold the same  *  *  *  for and so long as the same shall be used as a right of way." This language appears in the *habendum* clause, where usually all limitations upon the estate granted are found, if any be imposed. And no other language or clause is found which in any way impairs or detracts from the clause "for and so long as the same shall be used as a right of way." The only conclusion, as it seems to us, is that the parties intended by the deed to convey to the company an easement only, and to vest in the company the right to hold and use the land so long as it was devoted to the purpose stated, and no longer. Such seems to be the construction given to similar deeds in other states. Reichenbach v. Washington S. L. Ry. Co. 10 Wash. 357, 38 Pac. 1126; Abercrombie v. Simmons, 71 Kan. 538, 81 Pac. 208, 1 L.R.A. (N.S.) 806, 114 Am. St. 509, 6 Ann. Cas. 239; Jones v. Van Bochove, 103 Mich. 98, 61 N. W. 342; and authorities cited in the note to the first case here cited in 1 L.R.A.(N.S.) 806; Flaten v. City of Moorhead, 51 Minn. 518, 53 N. W. 807, 19 L.R.A. 195. Such a limitation obviates the necessity of affirmative action on the part of the grantor to terminate the estate or right granted, for the intentional abandonment of the property operates to extinguish all rights of the grantee without affirmative action on the part of the grantor.

2. Are the findings of abandonment sustained by the evidence? The question must be answered in the affirmative.

No question arises as to the result and effect of an abandonment in a case of this kind. The Norton deed conveyed an easement for railroad purposes and, unlike a conveyance of the fee title, the right so granted may be lost by abandonment. This is settled law, and not here disputed. 14 Cyc. 1185; 1 Ruling Case Law, 4. To have the effect of divesting title and reinvesting the same in the grantor of the easement, the abandonment must amount to something more than mere nonuser, for there must appear to have been an intentional

relinquishment of the rights granted. There was in this case an actual nonuse of the right of way for 10 years, and the question of the intention of the company is of primary importance. Did the company take up the tracks and cease using the right of way with the purpose of abandoning and relinquishing its rights in the land? This intention need not appear by express declaration, but may be shown by acts and conduct clearly inconsistent with an intention to continue the use of the property for the purposes for which it was acquired. And it has been held that where the grant was for a public benefit, as in this case, an intention to abandon will more readily be assumed from a long continued nonuser, than where the grant was for a private use. Jones, Easements, § 856; Henderson v. Central Passenger Ry. Co. 21 Fed. 358; Roanoke Inv. Co. v. Kansas City & S. E. Ry. Co. 108 Mo. 50, 17 S. W. 1000.

In the case at bar the right of way was granted to the transfer company for and so long as it continued to occupy and use the same for railroad purposes. The grantee was a public service corporation, charged with certain duties and obligations in supplying facilities to other like corporations. By the abandonment of the road, by taking up and removing the track from the line in question the Northern Pacific Co. relieved itself from the discharge of those duties and obligations. The line from Sixty-third avenue, West Duluth, to a point near Spirit Lake was parallel to the St. Paul & Duluth line, owned by the Northern Pacific Co., and there was, so far as disclosed by the record, no necessity or occasion for maintaining both lines; the St. Paul & Duluth line answered and supplied all the needs and requirements of defendant. The line from the point near Spirit Lake extended to a connection with the old Duluth & Winnipeg line of railroad, and when that road was in operation afforded it an entrance into Duluth over the transfer line. But the Duluth & Winnipeg line had been abandoned and the track taken up, and the extended transfer line was of no use or purpose beyond the point of divergence from the St. Paul & Duluth line near Spirit Lake. The defendant took up all this line between the points stated, removed the tracks, ties, rails and bridges, and all in connection therewith which was of any value or suitable for use elsewhere, and for 10

years made no use of the right of way for any purpose. It grew up
to weeds and, according to the findings of the court, not until another
railway company attempted to acquire the same for a right of way
did the defendant attempt to retake possession of the land. The
usefulness of the right of way for the purposes for which the grant
was made, had long before been completely destroyed by the removal
of the track and bridges, and there was a complete cessation of the
use thereof for any purpose. From these facts, about which there is
no dispute, we are clear that the trial court was fully justified in
finding an intentional abandonment of the right of way. The facts
bring the case within Chambers v. Great Northern Power Co. 100
Minn. 214, 110 N. W. 1128, where a similar situation was pre-
sented. While the right of way held to have been abandoned in that
case was not acquired by express grant, as in the case at bar, the
facts tending to show intentional abandonment are substantially the
same, though not in all respects so clearly indicative of the intention
as in the case at bar. The authorities elsewhere also sustain this
view of the case. Hickox v. Chicago & C. S. Ry. Co. 94 Mich. 237,
53 N. W. 1105; Chicago & E. I. Ry. Co. v. Clapp, 201 Ill. 418, 66
N. E. 223; Jones v. Von Bochove, 103 Mich. 98, 61 N. W. 342;
Gourdon & Ft. S. R. Co. v. Vaught, 97 Ark. 234, 133 S. W. 1019;
Davis v. Gale, 32 Cal. 27, 91 Am. Dec. 554.

Defendant offered evidence tending to show that the removal of the
track and bridges was not with any intention of abandoning the line,
or its rights therein, but for temporary purposes only. Certain maps
prepared by employees of the company for the purpose of showing
the rights of way, held and owned by the company at Duluth indicated
a continuing claim to this right of way. These maps were prepared,
as we understand the matter, after the tracks had been taken up
and removed, and the markings thereon included this particular
right of way. It was not so marked out on one of the maps. These
maps were proper evidence for the trial court, but are not conclusive
that there was no intention to abandon permanently this part of the
transfer line. The evidence was proper for the consideration of the
trial court in connection with the other facts and circumstances
disclosed. The effort of the representatives of the Norton estate to

escape taxation as to this strip of land can have no bearing upon the issue of defendant's abandonment of the same.

3. A full consideration of the whole record leads to the conclusion that there was no reversible error in the exclusion of the evidence of witness Cooper. This witness was general manager of the Northern Pacific Co. at the time of the removal of the tracks, and he was present at the time the president of the company ordered the tracks taken up. The matter of the removal was wholly within the authority of the president of the company, and defendant sought to show by witness Cooper that in ordering the removal the president stated that the purpose of the change was temporary and that there was no intention of permanently abandoning the property. While declarations of the holder of an easement tending to characterize his act in abandoning the same would be admissible against him, it is not altogether clear that such declarations may be received in his favor. 1 Jones, Ev. § 170; Hickox v. Chicago & C. S. Ry. Co. 94 Mich. 237, 53 N. W. 1105. But we do not decide the question of the admissibility of the hearsay statement of the intention of the president of the road. We are clear that had it been received the result would have been the same. The case presented is one showing an abandonment in fact; that is, the tracks and bridges were removed, and there has been for 10 years a total failure to use the right of way for any purpose. This so clearly presents a case of intentional abandonment, that the hearsay evidence would have had no substantial probative force or effect. Its rejection was therefore not prejudicial. The same may be said of the evidence of the manager of the company, as to what his intention was in taking up the track. His intention was that of the president of the company, who had exclusive authority in the matter, and he was without authority to formulate an opinion of his own which could affect the purpose or intent of the company. The witness testified that whatever intention he had in the matter was founded upon the intention of the president of the company.

Our conclusion therefore is that the Norton deed conveyed to the transfer company an easement only, that the findings of an intentional

abandonment by defendant are sustained by the evidence, and that there was no reversible error in the exclusion of evidence.

Order affirmed.