# UNITED PARKING STATIONS, INC. v. CALVARY TEMPLE AND ANOTHER.
## LUTHERAN BROTHERHOOD, APPELLANT.

101 N. W. (2d) 208.

February 5, 1960—No. 37,754.

274

*Cyrus Rachie* and *William W. Fink,* for appellants.
*Faegre & Benson* and *Wright W. Brooks,* for respondents.

MAGNEY, COMMISSIONER.

Plaintiff, claiming a right-of-way over certain church property, brought suit to enjoin obstruction of its claimed easement. Findings were in favor of defendants. An order denied the motion for amended findings or in the alternative for a new trial. Appeal was taken from this order.

By two deeds, one executed in 1899 and the other in 1901, Minnesota Loan and Trust Company conveyed to Second Church of Christ Scientist the *southerly 99 feet* of certain lots in the city of Minneapolis. By the 1901 deed, the grantor reserved an easement over the easterly 14 feet of the property conveyed "to be used by the owners of said Lots No. 1, 2 and 3 and part of Lot No. 4 as aforesaid jointly as a right of way." Second Church of Christ Scientist built a stone church building on the property, which it occupied from 1901 to 1951. In 1951, Second Church, by contract for deed, agreed to convey the property to Calvary Temple, chief defendant here, by warranty deed, subject to the easement of record. In 1954, Calvary Temple constructed a Sunday-school building, which extended over the easement.

In 1902, Minnesota Loan and Trust Company conveyed the *northerly 66 feet* of the lots, together with other adjoining lots, to Curtis H. Pettit. On the death of Pettit in 1916, this property passed one-third to his widow, Deborah H. Pettit, and two-thirds to his daughter, Bessie P. Douglas. In 1921, Bessie P. Douglas acquired her mother's interest. After the death of Mrs. Douglas, in October 1955, the property was sold by her estate to Lutheran Brotherhood by deed of April 30, 1956. On that same day, Lutheran Brotherhood leased the property to United Parking Stations, Inc., the plaintiff here, which, as such lessee, together with defendant Lutheran Brotherhood, claims the benefit of the right-of-way easement over the easterly 14 feet described in the 1901 deed. For years plaintiff's property has been leased to parking lot operators and is designated as the parking lot property.

Defendants Second Church of Christ Scientist and Calvary Temple claim that there is no validity to the claim of plaintiff and Lutheran Brotherhood since the claimed easement (1) is barred by the Marketable Title Act and (2) was voluntarily abandoned. The Marketable Title Act provides as follows (M. S. A. 541.023, subd. 1):

"As against a claim of title based upon a source of title which source has then been of record at least 40 years, no action affecting the possession or title of any real estate shall be commenced by a person * * * after January 1, 1948, to enforce any right, claim, interest, incumbrance or lien founded upon any instrument, event or transaction which was executed or occurred more than 40 years prior to the commencement of such action, unless within 40 years after such execution or occurrence there has been recorded in the office of the register of deeds [the required notice] * * *."

Here the source of title, the warranty deed conveying a fee simple title from Minnesota Loan and Trust Company to Second Church of Christ Scientist, has been of record since 1901, more than 40 years prior to January 1, 1948. The easement in question was created in the same instrument and therefore of record also over 40 years. No notice preserving the easement was filed prior to January 1, 1948. The fundamental requirements for the application of the Marketable Title Act are therefore present. Unless some exception exists, and plaintiff does contend that such exceptions do exist, the claim of easement by plaintiff is barred by the statute. Since no notice was filed, it is conclusively presumed under the statute that the more-than-40-year easement has been abandoned. Section 541.023, subd. 5, provides:

"Any claimant under any instrument, event or transaction barred by the provisions of this section shall be conclusively presumed to have abandoned all right, claim, interest, incumbrance or lien based upon such instrument, event or transaction; * * * it being hereby declared as the policy of the State of Minnesota that, except as herein provided, ancient records shall not fetter the marketability of real estate."

There are certain situations where the statute is not a bar. They are set out in § 541.023, subd. 6. One of these exceptions reads:

"This section shall not * * * bar the rights of any person, partnership or corporation in possession of real estate."

Plaintiff relies on this exception, claiming that it was in actual possession at the time the statute went into effect. It also claims that, if not in actual possession itself, it nevertheless was in constructive possession through Second Church of Christ Scientist, the fee owner on January 1, 1948, by virtue of the wording of the reservation in the 1901 deed.

In Wichelman v. Messner, 250 Minn. 88, 103, 83 N. W. (2d) 800, 814, we said:

"* * * The statute provides (§ 541.023, subd. 6) that persons in possession of real estate are exempt from the requirements of filing notice. Possession obviously means actual occupancy or use of part or all of the real property. Such actual (or constructive) occupancy or use is itself notice of a claim or interest which has not been abandoned or become nominal. Thus * * * right-of-way easements which are manifested by actual use or 'occupancy' (consistent with the nature of the easement created) are protected even if the requirement of filing notice is not met."

Actual possession, in order to save the easement to plaintiff, must have existed or have been a reality on January 1, 1948. The question then resolves itself to a determination of what was the use and occupancy of the easement by the fee owner of the parking lot and its tenants on January 1, 1948. When the Marketable Title Act was enacted on March 24, 1947, Bessie P. Douglas was the fee owner of the parking lot, the claimed dominant estate. Prior to that time she had leased the parking lot to Kuka Brothers in an instrument which made no mention of the easement. Kuka Brothers were in possession from 1939 until March 1, 1948. They were therefore in possession at the critical or vital date, January 1, 1948. Raymond Kuka was personally in charge of the parking lot during their occupancy. He said that Kuka Brothers never made any use of the easement personally, nor did any of their customers during that period ever use the easement in entering or leaving the parking lot. Matthew E. Kuka, the other partner of Kuka Brothers, spent 80 percent of his time on the parking lot. His testi-

mony was the same as his brother's except that he said that occasionally school children would enter or leave the parking lot area in the capacity of trespassers. Such a use was not the use of the tenants of the parking lot or its owner. Both the Kukas testified that during the time they were leasing the parking lot and were in possession of it they knew nothing of the existence of an easement over the easterly 14 feet of the church property.

In no way was Bessie P. Douglas, the owner, or Kuka Brothers, her tenants, in possession of the easement at the time the Marketable Title Act was passed. Only right-of-way easements "which are manifested by actual use or occupancy" are protected if the requirement of filing notice is not met. This right-of-way easement was not "manifested by actual use or occupancy," as the testimony clearly shows, and was therefore not protected.

■  Plaintiff and its lessor, defendant Lutheran Brotherhood, make the claim that, since the right-of-way easement described in the 1901 deed was, by its terms, to be used by the owners of the lots "jointly as a right of way," the possession of Second Church of Christ Scientist would be their possession also, which fact therefore would make the statute inapplicable. Second Church, as grantee in the 1901 deed, had the possession as fee owner. It is difficult to see how an easement for right-of-way in its behalf can be imposed upon its own fee simple ownership of the property. Any recital in the deed reserving to it an easement for right-of-way over its own land is inoperative and can add nothing to the use and possession it already has. Under the facts, there can be nothing "joint" in the use of the 14-foot strip. One had the use and possession of it as owner in fee, and the other by virtue of a reservation. No new right could be created by the use of the word "jointly." If plaintiff's contention is valid, the result would be as well stated in the memorandum of the trial court. It states:

"The language used in the conveyance could only have the effect of transferring the fee to the vendee, subject to the right of way easement. If it can be reasoned that the use by the servient estate is likewise the use of the dominant estate, the Marketable Title Act, * * * could never have the effect of barring such a right of way ease-

ment. By the same token, there could not be a bar by abandonment or adverse user. This we cannot conceive to be the case."

■ Plaintiff also claims that the easement was revived, or in some way recreated, by the reference made to it in the contract for deed given by Second Church of Christ Scientist to Calvary Temple in 1951. In some way it claims that the recital reinstated the easement in the same manner as an acknowledgement of an outlawed debt would reinstate it.

Since no notice was filed as provided by the Marketable Title Act and since plaintiff and Lutheran Brotherhood were not in possession of the 14-foot strip at the time the act went into effect, the burden of the right-of-way easement became discharged on January 1, 1948. The easement then became nonexistent, but it was still of record because of the recital in the deed of 1901. It is evident that the purpose of the reference to the easement of record in the contract for deed was to exclude such easement of record from the agreement of Second Church to furnish a warranty deed and thus avoid the possibilities of an expense to the grantor in clearing the record title. When the easement became discharged on January 1, 1948, Bessie P. Douglas was no longer the owner of a dominant estate over the 14-foot easement. How a recital in the contract for deed given by Second Church to Calvary Temple can reinstate or recreate an easement for the benefit of Bessie P. Douglas and her successors in interest, so as to create to them again a dominant estate, we are unable to understand.

■ Defendants Second Church of Christ Scientist and Calvary Temple also contend that the easement has been lost by abandonment. The trial court so held. It is a rule of law that easements may be lost by abandonment where the owner of the dominant estate has made no use of it and his conduct is such as to evidence intention to abandon. Norton v. Duluth Transfer Ry. Co. 129 Minn. 126, 151 N. W. 907; Simms v. Fagan, 216 Minn. 283, 12 N. W. (2d) 783; 3 Tiffany, Real Property (3 ed.) § 825; Annotation, 25 A. L. R. (2d) 1265.

A wooden picket fence, constructed in 1908 or earlier, extended all the way across the property from east to west. This was maintained by the parking lot operator until 1933 or 1934, when it was torn down

and a concrete wall, 2 or 3 feet high, built by Second Church, replaced it. It also extended the full distance and across the 14-foot strip. The fence and the concrete wall obstructed the use of the 14-foot easement as ingress and egress to the parking lot property. Later it was discovered that the fence and the concrete wall were located 4½ feet north of the true property line and on parking lot property, so in 1936 Bessie P. Douglas leased the 4½-foot strip to Second Church for a term of 15 years at a nominal consideration. In 1953, after the expiration of this lease, Calvary Temple signed an agreement acknowledging the encroachment and agreeing to remove the wall on 60 days' notice. In neither the lease of 1936 nor in the agreement of 1953 was any reference made to the right-of-way easement. Kuka Brothers, who had leased the parking lot from 1939 to March 1, 1948, were not informed by the lessor, and did not know, as we have already stated, that there was a right-of-way easement over the easterly 14 feet of the church property to Eleventh Street. Andrew J. Adlis, who followed Kuka Brothers as lessee and operator of the parking lot and who remained in possession until Lutheran Brotherhood bought the property in 1956, was not told of the existence of the easement. It was not mentioned in his lease. Large trees were standing in the southeast corner of the parking lot property directly in front of the easement, and rubbish had collected in the corner. In the winter the snow removed from the parking lot was piled high in the corner opposite the parking lot. Because of the fence, wall, trees, and the other obstructions mentioned, there was no possibility of vehicles using the easement to enter or leave the parking area. Second Church and Calvary Temple officers and members parked cars in the easement area. Calvary Temple parked its buses there, and at one time a disabled car was permitted to remain there for several months. For many years until 1954 there was a concrete retaining wall 18 inches wide along the easterly line of the church property. In 1954, Calvary Temple erected a Sunday-school addition to the church which fully occupied the easement area. No objection to this obstruction was raised by the owner of the dominant estate, or the tenant parking-lot operator, until Lutheran Brotherhood acquired the parking lot property in 1956.

The trial court found as a fact that the easement had been abandoned. Whether or not an easement has been abandoned is a question of fact. Simms v. Fagan, 216 Minn. 283, 12 N. W. (2d) 783. The court in its memorandum, after reciting the salient facts, stated:

"* * * all lead this court to believe that the owners and those occupying under them, did not use the premises in question in any way consistent with the purposes of the easement, did not recognize its existence, and acted wholly as though it were non-existent."

The evidence clearly supports the finding of the court that the easement had been abandoned, and we so hold.

Order affirmed.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.