GANDY COMPANY, Respondent,

v.

Mathias FREUER, et al., Defendants,

Hugh J. Springer, Appellant.

No. 81–194.

Supreme Court of Minnesota.

Dec. 17, 1981.

Rehearing Denied Jan. 28, 1982.

Smith & Tollefson and John M. Smith, Stephen J. Smith, Owatonna, for appellant.

Walbran, Walbran & Walbran and Mary P. Walbran, Owatonna, for respondent.

SHERAN, Chief Justice.

This is an appeal by appellant Hugh J. Springer from a judgment of the Steele County District Court entered on December 31, 1980, that several named defendants,[1] including Springer, had lost their interest in an easement running upon respondent Gandy Company's (hereinafter Gandy) property by virtue of Gandy's adverse possession of the easement. Springer denied respondent's claim of title and counterclaimed for general and punitive damages based on Gandy's alleged trespass upon the land subject to the easement. The trial court rejected appellant's counterclaim for trespass. We reverse the judgment of the trial court and remand the case for consideration of appellant's counterclaim.

The creation of the disputed easement is traced back to a conveyance in 1874 by warranty deed from Gottleib W. Degner to Mathias Freuer of a cartway running north and south for 132 rods and east and west for 1 rod. The cartway runs from the northern portion of Springer's land northerly for a distance of 132 rods to a county road. On April 28, 1960, Gandy purchased the servient estate by contract for deed from William A. Degner. A title opinion prepared at that time stated that Gandy's land was subject to the cartway easement.

On April 28, 1964, pursuant to the contract for deed, William A. Degner delivered to respondent a warranty deed to the servient estate. The deed contained a recital that the land was subject to the recorded cartway easement. On the same day, Degner executed an affidavit that was admitted into evidence over appellant's objection, which stated in part:

[I]n the year 1918 said William A. Degner constructed a woven wire fence along the east side of the property above described and that ever since that time, said strip of land 1 rod east and west by 132 rods

north and south has not been used as a Cartway but has been farmed as a part of the farm out of which said 1-rod strip of land was originally taken.

An abstract of title introduced at trial showed the link of conveyances of the cartway easement from Gottleib Degner through several predecessors in interest and eventually to appellant Springer. Included in these conveyances was an 80-acre parcel of land immediately south of the cartway, which parcel was the dominant estate served by the cartway. Hugh Springer's title was obtained from his father, Joseph F. Springer. Both Joseph and Hugh Springer owned land to the east of, and contiguous to, the 80-acre dominant estate. The contiguous land was bordered by a public road to the east. On April 1, 1977, Hugh Springer sold all of his land except the north 16 acres of the dominant estate and the cartway. The 16-acre parcel retained by Springer has no access to a public road except by means of the cartway.

At the boundary line between the Gandy farm and the Springer tract is a line fence running east and west with a gate at the east corner over the cartway. The testimony clearly established that Joseph Springer erected this fence, but the nature and permanency of the gate was a subject of dispute. Some witnesses testified that the wire strands that attach to the corner fencepost and that would be used to swing the gate open were merely wrapped around the fencepost. There was other testimony that the wire strands were stapled.

In 1918, William Degner put another gate in place on the property now owned by Gandy. This gate was not locked prior to acquisition of title by Gandy. The evidence established, however, that Gandy padlocked this gate beginning in the spring of 1963.

The southern one-quarter of the cartway, which runs through a wooded area, was never tilled or farmed. The remainder of the cartway, which runs over open ground from the wooded area to the county road,

---

1. Appellant Springer was the only defendant to answer. Default judgments were entered against the other named defendants, Hugh

Springer's predecessors in interest to the adjoining dominant estate and to the easement.

was never farmed except for one instance when witness Raymond Johnson cleared out rocks and debris, plowed the cartway, and planted it to bluegrass.[2]

There was no evidence of use of the cartway by appellant Springer and his predecessors in interest until 1976, but hunters and others had used the cartway prior to Gandy's acquisition of ownership in 1964. Witnesses who were tenants on the servient estate from 1947 to 1956 testified that William Degner, then owner of the servient estate, told them not to plow the cartway because it "belonged to the Springer land." Tenants and past owners of the servient estate used the cartway for a "turn-around" for farm machinery when farming the servient estate. Testimony that the cartway had not been used for cartway purposes in recent memory was uncontradicted. However, appellant Springer claimed dominion over the cartway by introducing into evidence two leases that included the cartway as part of the leased dominant estate.

E. S. Gandrud, president of Gandy, testified that the principal, if not the only, reason that "private keep out" signs were erected on the cartway and that the gate was padlocked was to keep hunters out of the wooded area where he pastured his horses. Appellant Springer testified that prior to 1976 he was not aware of any activity by Gandy that was inconsistent or adverse to his cartway easement. In October and November of 1976, Springer found one of the gates on the cartway padlocked. He objected to respondent's agent, Dale Gandrud, and was told the padlock would be removed. Springer also objected to E. S. Gandrud, who told Springer that the purpose of the lock was to keep hunters out. When Springer next drove on the cartway the padlock was removed, but 2 weeks later it was back in place and respondent instituted this action shortly thereafter.

Based on the foregoing facts, the trial court concluded that Gandy had established a claim of adverse possession under Minn. Stat. § 541.02 (1980).[3] The effect of this judgment, of course, was to extinguish appellant's easement and vest fee title to the cartway in the respondent. Appellant's counterclaim for trespass was rejected.

The issues on appeal are (1) whether the facts, as found by the trial court, are sufficient to establish adverse possession of the easement by Gandy, and (2) whether the trial court erred in admitting the affidavit of William Degner into evidence.

1. The elements of proof necessary to establish ownership by adverse possession are well established in Minnesota. In *Ehle v. Prosser*, 293 Minn. 183, 197 N.W.2d 458 (1972), we stated:

> In order to establish title by adverse possession, the disseizor must show, by clear and convincing evidence, an actual, open, hostile, continuous, and exclusive possession for the requisite period of time which, under our statute, is 15 years. Subjective intent to take land adversely is not essential in this state and title by adverse possession may be obtained even though the disseizor does not intend to take land not belonging to him so long as he does intend to exclude all others.

*Id.* at 189, 197 N.W.2d at 462. In general, the adverse possession that will extinguish an easement must be of a character that is "wholly inconsistent with the right to enjoy the easement and amount in effect to a disseisin or ouster of the dominant owner." 25 Am.Jur.2d *Easements and Licenses* § 110, at 513 (1966).

■ Moreover, the law clearly distinguishes between acts done by the easement owner himself or by the owner of the servient estate with the permission of the easement owner and acts done by the owner

---

2. This finding by the trial court is inconsistent with, and an apparent rejection of, the statement contained in the Degner affidavit that the cartway had been farmed regularly since 1918.

3. Section 541.02 provides in part that "No action for the recovery of real estate or the pos-

session thereof shall be maintained unless it appears that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the premises in question within 15 years before the beginning of the action."

of the servient estate that are inconsistent with the continuance of the easement. This court drew such a distinction in *Ehle*, by stating that "where the user is permissive on the part of the owner, there can be no prescriptive right, and * * * if the user was permissive in its inception, it must become adverse to the knowledge of the owner of the [land adversely possessed] before any prescriptive rights can arise." 293 Minn. at 191, 191 N.W.2d at 463 (quoting *Dozier v. Krmpotich*, 227 Minn. 503, 507, 35 N.W.2d 696, 699 (1949)).

■ There is precious little evidence in the record of acts done by Gandy, as opposed to acts done by appellant to his own easement, that were inconsistent with the continuance of the easement. The evidence was uncontroverted that the gate on the Gandy parcel was not locked prior to the spring of 1973. The majority rule is that the mere construction or maintenance of a gate or fence across a right-of-way easement is not an adverse possession. Annot. 25 A.L.R.2d 1265, 1325 (1952). Even assuming the Gandy gate was kept padlocked from 1963 forward, the statutory period would not have run at the time this action was commenced in January, 1977.

■ Furthermore, after Hugh Springer objected to the padlocked gate in 1976, the padlock was removed. The intermittent or occasional locking of a gate is not sufficient to establish adverse possession because, if for no other reason, the possession is not continuous. In addition, respondent's stated purpose for padlocking the gate was to keep hunters off his own property—an act not inconsistent with the easement owner's rights. Use of the cartway by respondent as a "turn-around" for farm machinery also was not inconsistent with appellant's enjoyment of the easement.

■ In sum, the proof was insufficient as a matter of law to show by clear and convincing evidence that respondent's possession of the cartway easement was actual,

open, hostile, continuous, or exclusive. By respondent's own admission, it did not "claim exclusive ownership as against the world * * *." *Ehle v. Prosser*, 293 Minn. at 190, 197 N.W.2d at 462. Respondent's possession of the cartway, if it did possess the cartway at all, was not such as to work a denial of the right to its use, which is required to extinguish an easement.

2. The second issue is whether the trial court erroneously admitted into evidence the affidavit of William Degner, a prior fee owner of the servient estate. The affidavit was offered by Gandy to show adverse user of the easement.

■ Appellant argues that the affiant's assertion that the cartway was farmed and never used as a cartway is contradicted by evidence that Degner instructed tenants not to farm the cartway because it belonged to the Springer land, that it was farmed for only 1 year and not otherwise, and that when Degner conveyed his property to Gandy on the same day the affidavit was executed, he conveyed subject to the easement. These contentions go to the weight of the evidence and not to its admissibility. Moreover, admission of the affidavit, even if in error, was harmless because the court's finding that "the cartway area * * * was never farmed * * * except for one year" indicates that the trial court did not rely on the assertions in the affidavit to establish adverse possession.

We therefore reverse the trial court's finding of adverse possession and remand the case to the trial court for consideration of appellant's counterclaim for trespass.[4] However, we note in passing that even though the record on appeal is incomplete, we find no evidence to indicate that appellant has suffered any damages caused by respondent's alleged trespass.

Reversed and remanded.

4. The trial court rejected appellant's counterclaim without discussion, apparently on the belief that the trespass claim was necessarily

inconsistent with its finding of adverse possession.