**RICHARDS ASPHALT COMPANY, Appellant,**

v.

**BUNGE CORPORATION, et al., Bankers Trust Company, et al., Respondents.**

**No. C9–86–1208.**

Court of Appeals of Minnesota.

Jan. 13, 1987.

Robert R. Barth, Best & Flanagan, Irving C. MacDonald, Walstad & MacDonald, Minneapolis, for Richards Asphalt Co.

Steven J. Snyder, Winthrop, Weinstine & Sexton, St. Paul, for Bunge Corp. et al.

Richard T. Wylie, Minneapolis, for Bankers Trust Co., et al.

Considered and decided by LESLIE, P.J., and FOLEY and RANDALL, JJ., with oral argument waived.

## OPINION

RANDALL, Judge

Appellant Richards Asphalt Company brought an action to enjoin respondent Bunge Corporation from using a spur track easement across land owned by appellant. Appellant claims respondent permanently abandoned the easement. On June 9, 1984, the Scott County District Court entered judgment in favor of respondents, finding no abandonment. We affirm.

## FACTS

Appellant owned a 132 acre parcel of land in Savage, Minnesota. The parcel abutted two separate rail facilities. The Chicago, Northwestern Railroad (CNW) main line was located on the south side of the property, and the Minneapolis, Northfield & Southern Railway (MN & S) was on the east side of the property.

In 1959 appellant sold the southwesterly sixty acres to Central Soya. As a result, appellant lost direct access to the CNW line. In 1965 appellant and Central Soya entered into an easement arrangement by which appellant received easement rights to regain access to CNW tracks and Central Soya obtained an easement to access MN & S tracks. Appellant regained the easement in order to make a lease more attractive to respondent Bunge Corporation.[1]

In August 1965 Bunge Corporation agreed to lease a portion of appellant's land. The lease contained a section which restated the terms of the easement agreement between appellant and Central Soya. The lease gave Bunge Corporation a nonexclusive right to use the existing spur track over Central Soya's property to the CNW track and a spur track to be constructed across appellant's remaining property to the MN & S track. Appellant constructed the spur track over its own property in 1965. Immediately after Bunge

Corporation entered into the lease agreement, it began to use the easement over the Central Soya property.

In 1966 and 1967, appellant relaid the track across its own property because the original track had collapsed due to dredging and high water. The route of the easement over appellant's property changed, and Bunge Corporation's lease was amended to reflect the route of the new easement. Neither Central Soya nor Bunge Corporation has ever used the track on appellant's property, at either location, to access the MN & S track.

In 1967 Bunge Corporation assigned its interest in the lease to Bunge Properties, which subleased the property back to Bunge Corporation. Shortly thereafter, Bunge Corporation executed an indenture of mortgage and an assignment of lease with respondents Bankers Trust Company and J.C. Kennedy (trustees), who became record owners of the mortgage and assignment of the land, together with the easement across appellant's property.

In spring 1969, appellant placed four to seven feet of fill on the entire spur track on its property to protect it from flooding. Bunge consented to this, and even financed a portion of the dike construction. Bunge also placed substantial amounts of fill on its own trackage located on the property it leased from appellant. After the water receded, Bunge removed fill from the spur running from the nose of its barge slip to the CNW tracks. No one, however, removed the fill from the spur on appellant's property.

In the same year, MN & S removed the "frog"[2] connecting the spur track to the MN & S main line. This made it impossible to access the main line of the railroad, even if the spur track had been cleared for use. Neither Bunge nor Central Soya complained about removal of the frog.

In October 1973, after appellant and Bunge commenced negotiations for the sale

---

1. The parties do not consistently distinguish between Bunge Corporation and Bunge Properties.

2. A frog is a device on intersecting railroad tracks that permits wheels to cross the junction. The American Heritage Dictionary 535 (2nd college ed. 1982).

of the leased property, appellant removed portions of the track on and near land it sold to Bunge on November 13, 1973. At that time the parties executed a mutual release, which purported to release the parties from all money actions, claims, and demands either of the parties may have against the other by virtue of the amended lease. The release does not specifically refer to the easement. The two separate warranty deeds of conveyance, one from appellant and one from Myron and Jeanette Richards (principals in Richards), individually, granted the land subject to the lease and the easement agreements. The easement appears as a memorial on the Torrens certificate of title to the property.

The trial court found that, although appellant crossed the easement with dirt roads, it did not otherwise use the easement area. Pipelines from appellant's oil terminal on the Minnesota River to its asphalt facility run underground at the location of the easement.

It has recently become economically advantageous for Bunge to have an easement across appellant's property. Bunge first notified appellant of its intent to use the easement in 1985, twenty years after the easement was conveyed to Bunge.

The trial court concluded that respondent had not permanently abandoned its easement, and thus retains a valid easement. It entered judgment in favor of respondents. Appellant did not move for a new trial or a judgment N.O.V., but appealed from the judgment, alleging insufficiency of the evidence.

## ISSUE

Did the trial court's findings support its conclusion that respondents did not permanently abandon the easement across appellant's property?

## ANALYSIS

■ Respondents urge that because appellant did not file a transcript with this

court, we must dismiss the appeal.[3] In order to make a finding on the sufficiency of the evidence, this court would have to either examine transcripts of the trial court or have before it a set of stipulated facts agreed to by the parties. *Fritz v. Fritz,* 390 N.W.2d 924 (Minn.Ct.App.1986). Appellant's failure to provide this court with a transcript would normally preclude us from reaching a sufficiency-of-evidence issue on appeal. *State v. Heithecker,* 395 N.W.2d 382, 383 (Minn.Ct.App.1986), citing *Godbout v. Norton,* 262 N.W.2d 374, 376 (Minn. 1977), *cert. denied,* 437 U.S. 901, 98 S.Ct. 3086, 59 L.Ed.2d 1131 (1978).

■ However, appellant claims this court can review the merits of its legal argument because it does not contest the findings made by the trial court. Appellant's version of the facts is consistent both with respondent's version and with the findings of the trial court. Appellant contends that since it only challenges the conclusions of the trial court, not its findings, this case is an instance where the law is applied to undisputed facts, and we can thus review the questions of law. *See A.J. Chromy Construction Company v. Commercial Mechanical Services, Inc.,* 260 N.W.2d 579, 581 (Minn.1977).

Appellant, having chosen to bypass post-trial motions and to rely on a limited record, has the burden of proving that the trial court's conclusions of law did not follow its findings of fact. *See Leininger v. Anderson,* 255 N.W.2d 22, 26–27 (Minn. 1977).

■ Appellant admits that to find in Bunge's favor on the issue of abandonment, the trial court must have made an implicit finding of fact that none of Bunge's acts clearly evidenced an intention to permanently abandon the easement. The trial court's factual findings will be affirmed if reasonably supported by the evidence. *State Department of Public*

---

**3.** The record did not contain a copy of the transcript as provided under Minn.R.Civ.App.P. 110.02, nor did the parties file an agreed statement of the record under Minn.R.Civ.App.P. 110.04 as an alternative to a transcript.

*Welfare v. Thibert,* 279 N.W.2d 53, 56 (Minn.1979).

Abandonment may occur when the owner of the dominant estate has made no use of an easement and his conduct is such as to evidence intention to abandon. *United Parking Stations, Inc., v. Calvary Temple,* 257 Minn. 273, 278, 101 N.W.2d 208, 212 (1960). Mere failure to use an easement does not necessarily extinguish it. *Simms v. William Simms Hardware,* 216 Minn. 283, 291, 12 N.W.2d 783, 787 (1943). A claim of abandonment can be upheld only where nonuse is accompanied by affirmative and unequivocal acts indicative of an intent to abandon and is inconsistent with the continued existence of the easement. *See Township of Sterling v. Griffin,* 309 Minn. 230, 236, 244 N.W.2d 129, 133 (1976).

> [The easement holder's] intention [to abandon] need not appear by express declaration, but may be shown by acts and conduct clearly inconsistent with an intention to continue the use of the property for the purpose for which it was acquired.

*Norton v. Duluth Transfer Railway Co.,* 129 Minn. 126, 132, 151 N.W. 907, 909 (1915). In *Norton,* the Duluth Transfer Railway Company obtained an easement to use land for tracks for its railroad cars "for and so long as the same shall be used as a right of way * * *." *Id.* at 131, 151 N.W. at 909. The supreme court held that evidence that the tracks and bridges had been removed and the right of way had not been used for ten years sustained the trial court's findings of an intentional abandonment. *Id.* at 131–32, 151 N.W. at 910.

In *Norton,* the easement was granted for so long as it was used as a right of way and the easement holder, not the owner of the servient estate, had acted to remove the tracks. Bunge was not required to use its easement to avoid losing it, and appellant and MN & S removed the tracks and the frog. Appellant claims Bunge's failure to complain when appellant removed the trackage from its property or when the railroad removed the frog was irreconcila-

ble with the claim that Bunge had merely been waiting until it wished to use the easement. Appellant would, thus, have us hold that respondent's failure to complain constitutes an affirmative act similar to that of actually removing the tracks and frog. *See Township of Sterling,* 309 Minn. at 236, 244 N.W.2d at 133.

The trial court found that neither Bunge nor Central Soya objected to the removal of the frog and that prior to selling a portion of its property to Bunge, appellant removed portions of the track on and near the land that was sold to Bunge. Although the trial court made no specific conclusion with respect to the significance of Bunge's failure to object to removal of the tracks or of the frog, the court was "unable to find an extinguishment of possession combined with a permanent intent to abandon as required by Minnesota law."

A change in the conditions which originally caused the creation of the easement is to be taken into consideration in determining intention to abandon. *Simms,* 216 Minn. at 292, 12 N.W.2d at 788. The trial court found that Bunge helped appellant to place fill on the tracks located on appellant's property. The court also found that "Bunge's assistance in covering the easement with fill was intended as a temporary measure to control flooding, *and was not intended as an affirmative act evidencing a permanent intent to abandon the easement.*" (emphasis added).

In light of the rule requiring clear evidence of abandonment, we do not find clearly erroneous the trial court's conclusion that partial temporary obstruction of the tracks did not constitute abandonment. *Harry E. McHugh, Inc., v. Haley,* 61 N.D. 359, 237 N.W. 835 (1931). Appellant claims that although Bunge's action in covering the tracks with fill would have been only a temporary abandonment if the fill had been removed, this was converted to a permanent intent to abandon when Bunge did not remove the fill in the sixteen years before it informed appellant of intent to use the easement. The trial court specifically

found, however, that covering the track did not evidence a permanent intent to abandon. The court found that leaving the fill, however long, was insufficient, standing alone, to establish abandonment of the easement.

The trial court found no intention to permanently abandon the easement, and appellant does not challenge the trial court's factual findings. Taking the trial court's factual findings as a whole, we cannot say the trial court clearly erred in its legal conclusion that there had been no abandonment.

## DECISION

The trial court's findings support its conclusion that respondents did not abandon their easement across appellant's property.

Affirmed.