**Perry John HICKERSON, Jr., et al., Appellants,**

v.

**Edgar BENDER, et al., Respondents.**

**No. C7-92-2463.**

Court of Appeals of Minnesota.

May 25, 1993.

Richard H. Breen, Breen & Person, Ltd., Brainerd, for appellants.

Raymond A. Charpentier, Charpentier & Lange, Brainerd, for respondents.

Considered and decided by DAVIES, P.J., and RANDALL and HARTEN, JJ.

## OPINION

HARTEN, Judge.

Appellants Mary and Perry John Hickerson, Jr. ("Jack" Hickerson) challenge the trial court's determination that an ingress-egress easement to a lake was extinguished by abandonment and adverse possession. We affirm.

## FACTS

In 1955, George and Lucille Fagan, owners of Lot Twenty, H.R. White First Subdivision of Gull Lake Shores in Cass County, conveyed a parcel of property on nearby Ruth Lake to Anna Marie and Roy Becker. The deed also granted the following easement at issue in this case:

An easement appurtenant in fee simple for the purpose of ingress to and egress from Gull Lake over the easterly Fifteen (15) feet of Lot Twenty (20), H.R. White First Subdivision of Gull Lake Shores * * *, on condition that this easement shall perpetually benefit all of the property heretofore and now owned by the grantors in Cass County, Minnesota, the present and future owners of any part of such property so owned by the grantors being entitled to share equally in this easement.

In 1957, the Beckers conveyed the property and easement to Cline Tincher, who conveyed it to Kenneth and Ruth Swisher in 1961. In 1990, the Swisher heirs conveyed the Ruth Lake parcel and the Gull Lake easement to appellants.

As to Lot Twenty on Gull Lake, in 1958 the Fagans conveyed the lot to respondents Edgar and Virginia E. Bender. The Benders erected a house and garage and made other improvements between 1958 and 1962. The Fagan to Bender deed made no mention of the easement, nor did a subsequent corrective deed in 1980. The Benders's garage and improvements—a poured concrete patio, stone barbecue, tree planters, a raised concrete block retaining wall at the top edge of the beach, numerous mature trees, and shrubs—materially block the easement. (*See* appendix.) No one disputes that passage through the easement would now be arduous and impeded.[1]

At trial, Edgar Bender and several neighbors testified that they had not seen anyone make use of the easement during the period of the Bender's residence, which began in 1959. However, Dr. Marion Swisher testified by deposition that he and his father had walked the easement "within an arm's length" of the Bender house during the Christmas holiday of 1967.

Virginia Bender acknowledged that on one occasion in the winter of 1967, she had observed a party from the Swisher residence trek to Gull Lake, but on unplatted government land adjoining Lot Twenty.

Robert Alderman testified by deposition that he had walked the easement once with Kenneth Swisher in "the late '70's." Jack Hickerson testified that he walked the easement several times in 1991 after acquiring the Swisher property.

The Hickersons commenced suit, seeking an order

that [the] easement is valid, and that [the Benders] shall permanently cease * * * interfering with [the Hickersons'] use of [the] easement, and * * * [for] judgment in the amount of $10,000.00 * * * for [the Hickersons'] costs [of] enforcing their rights.

The Hickersons also sought to keep a boat on the property. Following a bench trial in August 1992, the trial court adjudged that the easement had been extinguished by both abandonment and adverse possession prior to the Hickersons' acquisition. No finding was made that the easement had been used at any time.

## ISSUES

Did the trial court err in determining that the easement was extinguished by both abandonment and adverse possession?

## ANALYSIS

In an appeal from a judgment where no motion for a new trial was made, review is limited to "whether the evidence sustains the findings of fact and whether [the] findings sustain the conclusions of law and the judgment." *Gruenhagen v. Larson,* 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976).

█ 1. *Abandonment.* Abandonment of an easement is generally a question of fact. *Simms v. William Simms Hardware, Inc.,* 216 Minn. 283, 293, 12 N.W.2d 783, 788 (1943).

To have the effect of divesting title and reinvesting the same in the grantor of the easement, the abandonment must amount to something more than mere [nonuse], for there must appear to have been an intentional relinquishment of the

---

1. The trial court found that the permanent improvements "obstructed the easement to the extent that traversing [it] would have been nearly impossible without making unnatural and difficult maneuvers."

rights granted. * * *. This intention need not appear by express declaration, but may be shown by acts and conduct clearly inconsistent with an intention to continue the use of the property for the purposes for which it was acquired.

*Norton v. Duluth Transfer Ry.*, 129 Minn. 126, 131–32, 151 N.W. 907, 909 (1915). The railway company's complete removal of tracks in *Norton,* with ten years of nonuse, proved intent to abandon. *Id.* at 132–33, 151 N.W. at 909.

Here, the trial court determined that the Hickersons' predecessors' (Swishers') acquiescence to the Benders' improvements was evidence of intent to abandon under *Simms. See Simms,* 216 Minn. at 292–93, 12 N.W.2d at 787 (acquiescence to multiple obstructions on easement adjoining buildings over several decades).

The Hickersons argue, however, that requisite affirmative acts of abandonment are absent in the present case. *See Richards Asphalt Co. v. Bunge Corp.,* 399 N.W.2d 188, 192 (Minn.App.1987) ("affirmative and unequivocal acts indicative of an intent to abandon" must accompany nonuse). The issue in *Richards* was whether the easement-holder's failure to object when railroad tracks were removed from the easement and his assistance in placing fill on the tracks was evidence of abandonment. *Id.* at 190. The *Richards* court held that there was no abandonment because of a factual finding that the fill was intended only as a temporary flood protection device. *Id.* at 192–93.

■ Nonetheless, the pervasiveness and permanency of the improvements here distinguish this case from *Richards.* We find this case is more aligned with *Norton.* The failure of the easement holders to object to the Benders' obstruction to the easement is "conduct clearly inconsistent" with use of the easement. *Norton,* 129 Minn. at 132, 151 N.W. at 909; *see also United Parking Stations, Inc. v. Calvary Temple,* 257 Minn. 273, 278–80, 101 N.W.2d 208, 212–13 (1960) (decades of nonuse of easement with various obstructions such as fences and walls supported abandonment finding). Furthermore, both the *Simms*

and *Calvary Temple* courts explicitly deferred to the trial courts' fact finding of abandonment based on acquiescence to significant obstructions, combined with lengthy nonuse. *Simms,* 216 Minn. at 283, 12 N.W.2d at 788; *Calvary Temple,* 257 Minn. at 280, 101 N.W.2d at 213. We agree with the trial court that the easement was eliminated by abandonment.

■ 2. *Adverse Possession.* The trial court also concluded that the easement was extinguished by adverse possession. To extinguish an easement by adverse possession, the possessor must prove, by clear and convincing evidence, an exclusive, actual, hostile, open, and continuous possession for the statutory fifteen year period. *Gandy Co. v. Freuer,* 313 N.W.2d 576, 578–79 (Minn.1981). Adverse possession must be "inconsistent with continuance of the easement." *Id.* at 579. The trial court's factual findings satisfy the elements of adverse possession.

■ The Hickersons argue that the improvements were not "open, notorious, and hostile" because the improvements may not have been visible to their predecessors in title from adjoining Green Gables Road. We construe "open," however, to mean visible from the surroundings, or visible to one seeking to exercise his rights. *See, e.g., Grubb v. State,* 433 N.W.2d 915, 918 (Minn.App.1988) (open use of otherwise hidden property shown by posting "no trespassing" signs, eviction of trespassers, and granting permission to enter upon and view land), *pet. for rev. denied* (Minn. Feb. 22, 1989). The Hickersons' argument tends to concede that the easement and obstructions were disregarded by the Hickersons' predecessors. Moreover, their argument is refuted by the trial court's finding that "the improvements were obvious obstructions [of] which anyone who claimed rights adverse to the interest of the [Benders] would have been aware."

The improvements are more substantial than the intermittently locked gate at issue in *Gandy. See Gandy,* 313 N.W.2d at 579. The improvements here are also not consistent with continued use of the easement. The trial court's findings support the con-

clusion that the Benders extinguished the easement by adverse possession.

guished by abandonment and adverse possession.

## DECISION

**Affirmed.**

The trial court's findings support the determination that the easement was extin-

## APPENDIX

SEC. 9, T. 134 N.,R.29 W.
CASS COUNTY, MN.

GREEN GABLES ROAD